DARIUS WHITE vs. REPUBLIC FIRE INSURANCE COMPANY.
SAME vs. RELIEF FIRE INSURANCE COMPANY.

The damage and expense caused and incurred by removing, with that reasonable degree of care suited to the occasion, insured goods from an apparent imminent destruction by fire, are covered by a policy insuring against "loss or damage by fire," although the building in which they were insured and from which they were thus removed, was not in fact burned.

ON REPORT.

ASSUMPSIT on two policies of insurance against "loss or damage by fire."

The appraised loss upon stock, consisting mainly of bristles and brushes manufactured and in process of manufacture, was $1,728.76; expense of moving, $115.90; and loss on tools insured by Republic Company, $58.80.

The goods covered by the policies in suit were in the third story in Ware's block, on the northerly side of Federal street, Portland, over stores numbered 101, 105, and 107, with the entrance on Federal street. The main building was of brick, three stories high. In the rear of the main building, and within three feet of it, was a two-story brick building, with a wooden roof, connected with the main building by a somewhat flat wooden shed-roof. Stores 105 and 107 extended through the main building under the shed roof into the building in the rear. Store 107 was occupied as a clothing store. Between that part of it in the main building and the building in the rear, there was a light wooden partition. Store 105 was occupied as a grocery. The original brick wall of the main building had been cut through by windows and doors.

The time of the fire was that of the great conflagration, July 4, 1866. The whole eastern portion of the city, including the easterly side of Temple street (which was the first street east of the plaintiff) and the southerly side of Federal street, opposite the plaintiff's property, were destroyed, a heavy wind blowing the sparks and flames

upon the plaintiff's premises, so that the roof of the rear building was repeatedly on fire.

All the tenants in the block removed their goods.

The plaintiff first moved his goods down to the side-walk, where they were somewhat damaged by fire.

There was much testimony tending to show the imminent peril to which the plaintiff's goods were exposed. The stock left in the building was not injured.

The case was withdrawn from the jury and continued on report, the full court to render such judgment in connection with the agreement of the parties as the law and evidence required.

*S. C. Strout & H. W. Gage,* for the plaintiff.

*Davis & Drummond,* for the defendants.

1. The loss was not covered by the policies. *Hillier* v. *Alleghany Ins. Co.,* 3 Penn. 470. The building was not injured by fire or water.

2. The injury was not caused by the removal. They were in the same condition when returned. The injury had no necessary connection with the removal. No intrinsic injury; the mixing up of the different qualities of the bristles was not the result of the removal.

3. There was not the requisite care in the removal.

4. If liable at all, the liability is confined to tools and not to the negligent mixing of his stock.

DICKERSON, J.   Assumpsit on two policies of fire insurance, submitted on report.

On the night of the conflagration of July 4, 1866, at Portland, the plaintiff, apprehensive that the building known as Ware's block, on the northerly side of Federal Street, the third-story of which was occupied by him for the manufacture of brushes, would be destroyed by fire, removed his stock, consisting of bristles and manufactured brushes, and his tools from the building. The block was not destroyed or injured by the fire; and the plaintiff brings this

action to recover the damages thus done to his stock and tools, and for the expense incurred in removing them.

The important and interesting question is raised whether the plaintiff's loss is covered by the policy. In general, the assured is entitled to indemnity, unless the loss happens from the qualities or defects of the subject insured, his own fault, or some peril for which he is answerable. 1 Phillips on Ins. 639.

It is argued by the learned counsel for the defendants that this is not a loss by fire; that fire was not the proximate cause of the damage, and that therefore the loss is not covered by the policy. While it has been held that a loss by lightning without combustion is not a loss by fire, it has, also, been held that the loss of a building by being blown up by gunpowder, and demolished to stop a conflagration is within the terms of a fire policy. *Babcock* v. *Montgomery Co. Mut. Ins. Co.*, 6 Barb. 637. *Keniston* v. *Merrimack Co. Mut. Ins. Co.*, 14 N. H. 341. *City Ins. Co.* v. *Corlies*, 21 Wend. 367.

Damage done to goods by having water thrown upon them in extinguishing a fire, and a loss of goods by theft after they have been removed from a fire are covered by the policy. *Hillier* v. *Alleghany Ins. Co.*, 3 Penn. 470. *Witherell* v. *Maine Ins. Co.*, 49 Me. 200.

A bolt may be loosened, or a timber started in a storm without causing any loss until the subsequent action of the water or climate or the greater strain of a different cargo has so augmented the injury, as to cause the loss of the vessel; and yet such a loss is a loss by the storm. *Stephenson* v. *Piscataquis Ins. Co.*, 54 Me. 76.

So if after a storm has subsided, the boat is lost by reason of the disabled condition of the ship, in consequence of damage done during the storm, it is a loss by the storm. *Potter* v. *Ocean Ins. Co.*, 3 Sum. 27.

In these and like cases the direct proximate cause of the damage or loss is not to be found in the fire, or the storm, but in the water, the removal of the goods, the action of the climate, or strain of the cargo, or the disabled state of the ship. If courts were required to hold that no loss is caused by a policy of insurance unless the peril

insured against is directly operating upon the subject insured at the time of the ultimate catastrophe, they would deny the right to recover in many cases where it has long been recognized by courts of the highest authority.    The legal maxim, *causa proxima spectatur*, is by no means of unusual application in its strict technical sense.

If a loss from demolishing a building with gunpowder to stay the progress of a conflagration, comes within the terms of a fire policy, ought not the damages and expense, of removing such building, to be recoverable if the object in view could be as speedily and successfully accomplished?

In such cases is not the fire, the impending conflagration, the existing operating cause alike of the destruction of the building or of its removal from danger?    Is the assured entitled to recover damages for one of the effects of the same procuring cause, and not for the other?    If by reason of the immobility of real estate and the necessity of speedy action on such occasions, it becomes necessary to demolish a building, at the cost of the underwriters, to prevent it and other property from being destroyed by fire, does not the analogy of the law require that they should, also, be chargeable for the damage and expense of saving personal property from destruction by removing it to a place of safety?    Is not the producing cause of both results the same?

So if the underwriters are liable for damage done to goods by having water thrown upon the building in which they are stored, to extinguish the fire, ought they not, also, to be liable for damage done to goods, in time of imminent peril, by throwing water upon the building containing them to prevent it and them from destruction, though actual ignition has not taken place?    In both cases, technically speaking, the water and not the fire is the direct proximate cause of the damage.    It is neither the policy of the law nor public policy to make it for the interest of the assured, in case of fire, to postpone the use of the means for extinguishing the fire, and the removal of the goods, until the building containing them is actually on fire?    In many, if not most cases, such delay would be tantamount to consigning both goods and building to destruction.    Would the interests

of insurance companies or the public morals be subserved by the establishment of such a policy ?

The question presented is one of considerable difficulty, and one upon which the authorities are at variance. While the supreme court of Illinois, in a case like the one at bar, have held that the underwriters are liable for the damage to the goods and the expense of removing them, the court in Pennsylvania have denied them liability. *Case* v. *Hartford Ins. Co.*, 13 Ill. 676. *Hillier* v. *Alleghany Ins. Co.*, 3 Penn. 470. We think the liability of the underwriters, in these and similar cases, depends very much upon the imminence of the peril, and the reasonableness of the means used to effect the removal. The necessity for removal is analogous to the necessity that justifies the sale of a disabled vessel by the water. It is not to be determined by the result alone, but by all the circumstances existing at the time of the fire. The necessity for removal need not be actual, that is, the building may not have been actually burned, since this may have been prevented by a change in the direction or force of the wind, the more skillful or efficient management of the fire engines, or the sudden happening of a shower, or a like unforeseen event. But the imminence of the peril must be apparent, and such as would prompt a prudent uninsured person to remove the goods ; it must be such as to inspire a conviction that to refrain from removing the goods would be the violation of a manifest moral duty ; the damage and expense of removal, too, must be such as might reasonably be incurred under the circumstances of the occasion. Angell on Fire Ins. § 117.

When such a case exists, we think it the better opinion to hold that the underwriters are chargeable for the damage and expense of removing the goods, as this result seems most in accordance with reason, the analogies of the law, and public policy. Such, also, is the conclusion of Mr. Phillips, the learned commentator on the law of insurance. " It seems," he says, " to be the better doctrine, and the one most closely analogous to the jurisprudence on the subject of insurance generally, that the underwriters are liable for such damage and expense reasonably and expediently incurred, as being

directly occasioned by the peril insured against." 1 Phillips' Ins., 645–6.

The doctrine we maintain on this subject is applicable to a large class of cases, recognized by the law of insurance, and is found in that well-established principle of the law of insurance, that insurance against, or an exception of a peril, besides the consequences immediately following it, may include, also, a loss or expense arising on account of it, although what is insured against or excepted does not actually occur, provided the peril insured against, or excepted, is the efficient acting or imminent cause or occasion of the loss or expense. 1 Phillips' Ins., § 1131.

The proximity of the fire to the building occupied by the plaintiff, its rapid progress, terrible intensity and fearful ravages, leave no reason to doubt but the goods were removed through a reasonable apprehension that they would be destroyed by fire if suffered to remain. Their situation, too, in the third story, requiring earlier attention, rendered their condition more hazardous than if they had been on the first floor. A prudent uninsured person could scarcely have omitted the precaution taken by the plaintiff.

In removing the goods the plaintiff was bound to exercise that reasonable degree of care which was suited to the circumstances of the occasion ; and, when we consider the situation of the goods, the imminence of the peril, and the terror and consternation naturally excited by the progress and fury of the conflagration, we are not prepared to say that he did not exercise such care.

Under the rule for apportioning the damages between the two defendant companies, agreed upon by the parties, if the court should find that the plaintiff is entitled to recover, the plaintiff is to have judgment against the Relief Ins. Co., for the sum of one thousand two hundred and twenty-nine dollars and seventy-six cents, and interest from the date of the writ; and also against the Republic Ins. Co. for six hundred and seventy-three dollars and sixty-eight cents, and interest from date of the writ.

APPLETON, C. J.; WALTON, BARROWS, and TAPLEY, JJ., concurred.

CUTTING and DANFORTH, JJ., did not concur.