**1200**

AVONDALE INDUSTRIES, INCORPO-
RATED and Ogden Corporation,
Plaintiffs–Appellees,

v.

The TRAVELERS INDEMNITY COM-
PANY, Defendant–Third–Party
Plaintiff–Appellant,

v.

COMMERCIAL UNION INSURANCE
COMPANY, Highlands Insurance Com-
pany, American Motorists Insurance
Company, and National Union Fire In-
surance Company, Third–Party Defen-
dants–Appellees.

No. 999, Docket 89–7035.

United States Court of Appeals,
Second Circuit.

Argued April 10, 1989.

Decided Oct. 18, 1989.

Barry R. Ostrager, New York City (Seth A. Ribner, Michael Bailey, Brian G. Hart, Simpson Thacher & Bartlett, New York City, George A. McKeon, Gen. Counsel, Thomas L. Forsyth, Kathleen M. Hannon, Hartford, Conn., of counsel), for defendant-third-party plaintiff-appellant, Travelers Indem. Co.

Hugh N. Fryer, New York City (Edward M. Joyce, John P. Gasior, Fryer, Ross & Gowen, New York City, of counsel), for plaintiffs-appellees, Avondale Industries, Inc. and Ogden Corp.

Richard S. Feldman, Uniondale, N.Y. (Emily H. Levin, Rivkin, Radler, Dunne & Bayh, Uniondale, N.Y., of counsel), for third-party defendant-appellee, Commercial Union Ins. Co.

Patrick J. Dwyer, New York City (Heidell, Pittoni, Murphy & Bach, New York

City, of counsel), filed a brief for third-party defendant-appellee, Highlands Ins. Co.

James M. Sweet, Philadelphia, Pa. (Timothy C. Russell, Jane R. Coleman, Paul McDonald, Drinker Biddle & Reath, Philadelphia, Pa., of counsel), filed a brief for third-party defendant-appellee, American Motorists Ins. Co.

Thomas W. Brunner, Washington, D.C. (James M. Johnstone, Frederick S. Ansell, Wiley, Rein & Fielding, Washington, D.C., of counsel), filed a brief for Ins. Environmental Litigation Ass'n as amicus curiae.

James M. Sweet, Philadelphia, Pa. (Timothy C. Russell, Thomas S. Schaufelberger, Jane R. Coleman, Drinker Biddle & Reath, Philadelphia, Pa., of counsel), filed a brief for American Motorists Ins. Co. as amicus curiae.

Robert N. Sayler, Washington, D.C. (William F. Greaney, Eric C. Bosset, Laura L. Sardo, Steven G. Bradbury, Covington & Burling, Washington, D.C., of counsel), filed a brief for Chemical Mfrs. Ass'n, CIBA–GEIGY Corp., E.I. Du Pont De Nemours & Co., Intern. Business Machines Corp., Procter & Gamble Co. and Richardson–Vicks, Inc. as amici curiae.

Before NEWMAN, CARDAMONE and WINTER, Circuit Judges.

CARDAMONE, Circuit Judge:

Millions of tons of hazardous waste generated yearly are stored, deposited, recycled or dumped, and eventually escape infusing lakes, streams and underground waters; this toxic material finally comes into contact with unprotected people who are its victims. When its source is identified, the question becomes who is to clean it up and who is to pay for the damages it caused. According to a recent study by the Rand Corporation, in the last eight years only 34 of the 1,175 most egregious toxic waste dumps were cleaned—and of the dumps cleaned, polluters paid less than one-tenth of the cost. *See* N.Y. Times, Sept. 10, 1989, at A32, col. 1. This appeal confirms that the vast carelessness that created the conundrum of hazardous waste, which has continued for decades, will not be quickly or easily remedied. One facet of the problem is presented in this case: whether an insured may rely upon its insurer to defend it in litigation arising from claims that the insured improperly disposed of its toxic waste.

Appellant Travelers Indemnity Company (Travelers) appeals from a December 7, 1988 judgment of the United States District Court for the Southern District of New York (Conboy, J.), entered pursuant to a memorandum opinion and order dated October 19, 1988 granting partial summary judgment in a declaratory judgment action instituted by appellees Avondale Industries, Inc., a former subsidiary of Ogden Corporation (collectively appellee or Avondale). The judgment declared that Travelers had a duty to defend Avondale in private litigation in Louisiana and in a public administrative proceeding instituted against it by the State of Louisiana stemming from Avondale's disposal of hazardous waste products. Partial final judgment was entered in favor of Avondale pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

## BACKGROUND

Avondale is in the business of building and repairing commercial and U.S. Navy ships in New Orleans, Louisiana. As a part of its operations, it removes oil and chemical wastes from the holds and fuel tanks of the ships and barges it services. These petroleum products and chemical compounds, stored by it in holding tanks, were from 1975 to 1979 blended and sold to Combustion, Inc. Combustion transported the salvage oil from Avondale's plant to an oil recycling facility it owned near Baton Rouge, Louisiana. There, Combustion processed and resold the "salvage oil" that Avondale had sold it. The recycling facility and dump site at Denham Springs, Louisiana is the subject of the present litigation. This litigation was commenced by a series of lawsuits brought by persons residing near the Denham Springs facility who claimed personal injury and property damage caused by pollutants emanating from the dump site.

Travelers insured Avondale from 1975 to 1984 under a comprehensive general liability insurance policy that provided

[Travelers] will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this policy applies caused by an occurrence, ... and [Travelers] shall have the right and duty to defend any suit against the insured seeking damages on account of such injury or damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient....

The policy also contained the following "pollution exclusion" and "sudden and accidental" exception to the exclusion:

[Coverage shall not apply] to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, ... [or] toxic chemicals ... into or upon land, the atmosphere or any watercourse or body of water; *but* this exclusion does not apply if such discharge, dispersal, release or escape is *sudden and accidental.* (emphasis supplied).

In 1986, Avondale was one of a number of defendants named in the many private damage actions brought as a result of the waste site owner's allegedly tortious operations. These complaints asserted that defendants' containment measures were "insufficient;" that defendants "generated" hazardous substances; that defendants were culpable for the "escape" of hazardous materials. Importantly, there are no specific claims as to *how* the waste allegedly was discharged or escaped into the environment, or that Avondale—or any other defendant for that matter—intentionally or knowingly polluted the waste site in Louisiana.

Additionally, in January 1986, Avondale received a letter from the office of the Attorney General of Louisiana, issued at the request of the Louisiana State Department of Environmental Quality (DEQ). The DEQ letter notified Avondale of the Department's intention "to take immediate action to bring about the prompt and thorough cleanup of a hazardous waste site in Livingston Parish, commonly known as the Combustion, Inc. Oil Recycling Facility and to recover all costs of remediation expended by the State ... at that site." The letter noted that appellee was a "potentially responsible party" and demanded that it provide information with respect to the types of substances disposed, the location of disposal at the site, as well as certain names and dates. The DEQ letter also notified Avondale that willful disregard of the DEQ requests would result in potential penalties of up to $25,000 for each day that the information was not received, and the waiver of certain defenses available under Louisiana law. Finally, the letter made a "demand" that Avondale "submit a plan for remedial action at the site ... or ... pay to the Secretary the full costs of a remedial action" incurred by the State. The letter also required appellee, and other potentially responsible parties, to attend a meeting or face having a suit instituted against it by the Department.

Avondale notified Travelers of these developments and invoked the insurer's contractual duty to defend it in both the private and public actions. When Travelers was unresponsive, Avondale turned to the courts.

### PRIOR PROCEEDINGS

Avondale instituted this diversity action pursuant to 28 U.S.C. § 2201 (1982) seeking a judgment against Travelers declaring that it is contractually obligated to defend and indemnify Avondale in the underlying private and administrative proceedings. Upon appellee's motion for partial summary judgment on its duty to defend claim, Judge Conboy held that Travelers' duty to defend extended to both the DEQ proceeding and the private lawsuits. *See Avondale Indus., Inc. v. Travelers Indem. Co.,* 697 F.Supp. 1314, 1316–18 (S.D.N.Y.1988) (private suits); *id.* at 1318–20 (DEQ action). Avondale subsequently moved for entry of a partial final judgment pursuant to Fed.R. Civ.P. 54(b) following the district court's

determination that Travelers was obligated to defend.

Acknowledging that the duty to defend is distinct and separable from any duty to indemnify, the trial court held that there was no just reason to delay entry of final judgment. *See Avondale Indus., Inc. v. Travelers Indem. Co.*, 123 F.R.D. 80 (S.D. N.Y.1988). In so doing, it rejected Travelers' assertions that it would be prejudiced in its actions against third-party defendants, which Travelers had previously impleaded, and that a delay would not, in any case, prejudice Avondale. *Id.* at 83. Further, the district judge rejected Travelers' request that it await decision by the New York Court of Appeals in a purportedly similar case concerning an insurer's duty to defend in *Technicon Electronics Corp. v. American Home Assurance Co.*, 141 A.D.2d 124, 533 N.Y.S.2d 91 (2d Dep't 1988), *aff'd*, 74 N.Y.2d 66, 544 N.Y.S.2d 531, 542 N.E.2d 1048 (1989). Travelers appeals the entry of the Rule 54(b) judgment. We affirm.

## DISCUSSION

Three questions are presented for review: (1) whether the certification of final judgment under Rule 54(b) properly issued; (2) whether as a matter of law Travelers had a duty to defend Avondale in the private damage actions; and (3) whether the DEQ proceeding was a suit exposing Avondale to damages within the meaning of the comprehensive general liability insurance policy requiring Travelers to defend that action.

### I *Rule 54(b) Certification*

■ A long standing common law rule holds that an appeal may not be taken until all the matters in controversy in the trial court are disposed of, so as to prevent a case from being appealed in fragments. *See Hohorst v. Hamburg–American Packet Co.*, 148 U.S. 262, 264–65, 13 S.Ct. 590, 590–91, 37 L.Ed. 443 (1893). The rule against piecemeal appeals is firmly embodied in Fed.R.Civ.P. 54(b) that today permits the district court to "direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." To meet the need for flexibility without weakening the salutary requirement of finality before permitting an appeal, "the District Court is used as a 'dispatcher.'" *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 435, 76 S.Ct. 895, 899, 100 L.Ed. 1297 (1956). Under the Rule "upon an express determination that there is no just reason for delay," it may make "an express direction for the entry of judgment." Fed.R. Civ.P. 54(b).

A district court issuing a partial judgment is required to explain its reasoning. *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 445 (2d Cir.1985); *Cullen v. Margiotta*, 618 F.2d 226, 228 (2d Cir.1980) (per curiam). In reviewing a Rule 54 judgment, an appellate court must first assure itself respecting the separateness of the claims or parties so as to prevent piecemeal appeals in cases where the finality rule would ordinarily apply. On this aspect of an appeal the scope of review is broad. *See* 10 Wright–Miller–Kane, *Federal Practice and Procedure*, § 2655, at 43 (2d ed. 1983). Once these juridical concerns are satisfied, the determination of the district court as to just cause for delay is entitled on appeal to considerable deference, subject to reversal only for an abuse of discretion. *See Curtiss–Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 10, 100 S.Ct. 1460, 1466, 64 L.Ed.2d 1 (1980).

Claims are separable "if they involve at least some different questions of fact and law and could be separately enforced." *See Cullen v. Margiotta*, 811 F.2d 698, 711 (2d Cir.), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). It is well-settled that the duty to defend and the duty to indemnify are separate and distinct questions of fact and law. *See Servidone Constr. Corp. v. Security Ins. Co.*, 64 N.Y.2d 419, 424, 488 N.Y.S.2d 139, 477 N.E.2d 441 (1985) ("The duty to defend is measured against the allegations of pleadings[,] but the duty to pay is determined by the actual basis for the insured's liability to

a third person."). We are satisfied that the claim adjudicated, and upon which final judgment was entered, was separable from the other claims presented.

Travelers does not seriously contend that the first requirement of Rule 54(b) is not fulfilled. Instead, it argues vigorously that Avondale will suffer neither prejudice nor hardship should there be any delay in the entry of final judgment. Travelers notes that Avondale was at the time a subsidiary of Ogden Corporation, a large company that is purportedly providing for Avondale's defense in Louisiana, and argues that Avondale now seeks merely to shift payment from its former parent to its insurer. Avondale is actually exposed to no prejudice or hardship, appellant continues, and it is Travelers that may be prejudiced in its claims against other third-party defendants. Again, Travelers asserts that Rule 54(b) certification violated critical institutional concerns regarding finality because the district court disregarded a purportedly controlling state court precedent, a case then awaiting appeal to the state's highest court. We reject each of these arguments.

First, Avondale could be prejudiced were it forced to await final judgment on all its claims against Travelers. Beyond the cost of defending itself in the Louisiana actions, an insured is entitled to "litigation insurance" under New York law, as part and parcel of the insurer's duty to defend. *See, e.g., Seaboard Sur. Co. v. Gillette Co.,* 64 N.Y.2d 304, 310, 486 N.Y.S.2d 873, 476 N.E.2d 272 (1984), *International Paper Co. v. Continental Casualty Co.,* 35 N.Y.2d 322, 326, 361 N.Y.S.2d 873, 320 N.E.2d 619 (1974). Moreover, a unitary defense in the underlying actions would ameliorate possibilities that Travelers would later object to appellee's litigation strategy and the expenses Avondale incurred by defending itself. The defense costs in Louisiana are likely to be substantial and there is no reason that Avondale should delay having its insurer step in and defend it. We see no prejudice to Travelers in dealing with the other insurers.

Nor is there any affront to the institutional interests of the federal courts. Travelers seems to suggest that in this diversity case the district court either guessed at what the state law was or disregarded it. Neither contention is true. As noted below, *Technicon,* the supposedly authoritative case, is distinguishable because the insured in that case conceded that it had intentionally discharged industrial wastes. Hence, we conclude that the district court did not abuse its discretion in certifying partial final judgment under Rule 54(b).

## II  *Travelers' Duty to Defend the Private Actions*

We next consider whether under New York law and the subject policy, Travelers owed a duty to Avondale to defend it in the private damage actions instituted in Louisiana. The law in this area is well-settled. An insurer's duty to defend and to indemnify are separate and distinct, and the former duty is broader than the latter. *See Technicon,* 74 N.Y.2d at 73, 544 N.Y.S.2d 531, 542 N.E.2d 1048; *Servidone,* 64 N.Y.2d at 424, 488 N.Y.S.2d 139, 477 N.E.2d 441; *Seaboard,* 64 N.Y.2d at 310, 486 N.Y.S.2d 873, 476 N.E.2d 272. The duty to defend rests solely on whether the complaint in the underlying action contains any allegations that arguably or potentially bring the action within the protection purchased. *Technicon,* 74 N.Y.2d at 73, 544 N.Y.S.2d 531, 542 N.E.2d 1048. So long as the claims alleged against the insured rationally may be said to fall within the policy coverage, the insurer must come forward and defend. *Id.*

New York courts have held, in addition, that an insurer seeking to avoid its duty to defend bears a heavy burden. "[B]efore an insurance company is permitted to avoid policy coverage, it must ... establish[ ] that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation." *Seaboard,* 64 N.Y.2d at 311, 486 N.Y.S.2d 873, 476 N.E.2d 272; *see also Neuwirth v. Blue Cross & Blue Shield,* 62 N.Y.2d 718, 476 N.Y.S.2d 814, 465 N.E.2d 353 (1984) (mem.) (citations omitted). To avoid the

duty therefore the insurer must demonstrate that the allegations in the underlying complaints are "solely and entirely" within specific and unambiguous exclusions from the policy's coverage. *See International Paper*, 35 N.Y.2d at 325, 361 N.Y. S.2d 873, 320 N.E.2d 619.

■ Consequently, Travelers can be excused from its duty to defend only if it can be determined as a matter of law that there is no possible basis in law or fact upon which the insurer might be held to indemnify Avondale. *See, e.g., Villa Charlotte Bronte, Inc. v. Commercial Union Ins. Co.*, 64 N.Y.2d 846, 848, 487 N.Y.S.2d 314, 476 N.E.2d 640 (1985) (mem.). Comparison must be made *de novo* between the allegations contained in the complaint or underlying action and the terms of the policy. *See National Grange Mut. Ins. Co. v. Continental Casualty Ins. Co.*, 650 F.Supp. 1404, 1408 (S.D.N.Y.1986); *Seaboard*, 64 N.Y.2d at 310–11, 486 N.Y.S.2d 873, 476 N.E.2d 272.

■ Travelers relies on the New York Court of Appeals' recent affirmance of the Appellate Division's decision in *Technicon* rejecting a duty to defend under an identical "pollution exclusion." There Technicon operated a plant that manufactured blood analyzing machines. It was sued by private parties for personal injuries suffered as a result of exposure to toxic chemicals allegedly discharged by it into a stream. Technicon brought a declaratory judgment action in New York to compel its insurers to undertake their contractual duty to defend. Defendants asserted that a clause in their respective policies excluding losses relating to the discharge of pollutants unless such discharge is "sudden and accidental" relieved them of that duty. *Technicon*, 141 A.D.2d at 128, 533 N.Y.S.2d 91. Defendants argued that Technicon's answer in the underlying action had admitted that it had intentionally discharged toxins into the creek for some six years, and therefore that the pollution exclusion—and not the "sudden and accidental" exception to the exclusion—applied. This admission, defendants argued, made it clear that the polluting was neither sudden nor accidental.

The Appellate Division held that, on the facts alleged in the pleadings of the underlying action, defendants had no duty to defend, and that the pollution exclusion exempted from coverage "liability based on *all* intentional discharges of waste materials." *Id.* at 139, 533 N.Y.S.2d 91. It explicitly distinguished those cases in which the discharges alleged in the underlying complaint were in fact unintentional.

In affirming the Appellate Division, New York's highest court stated that as a matter of law the conduct complained of was not an accidental occurrence under the policy because Technicon conceded that it intentionally discharged toxic wastes from its blood sampling equipment into a creek. *Technicon*, 74 N.Y.2d at 75, 544 N.Y.S.2d 531, 542 N.E.2d 1048.

In the instant case the district court distinguished the Appellate Division holding in *Technicon*. *See* 697 F.Supp. at 1317 n. 4. It noted that the eight underlying complaints filed against, *inter alia*, Avondale alleged only that the site operator operated the site from 1960 to 1982; that waste products were disposed of there; and that the site contains hazardous waste, which the complaints asserted had caused and will continue to cause injury to person and property. *Id.* at 1317. In distinguishing the present case from *Technicon*, Judge Conboy noted that the complaint did not allege how the discharge escaped, nor what Avondale did to contribute to the seepage. There was no allegation that Avondale itself continuously and intentionally polluted. *Id.* at 1317.

Examining the allegations of the underlying Louisiana complaints it appears that Avondale is one of 70 named defendants. The allegations charge all the defendants with "insufficient" containment measures; with "generating" hazardous waste; with "knowledge" of the presence of toxins; with culpability for "escape" of hazardous materials. None of these conclusory assertions "clearly negate" the possibility that discharge or escape was "sudden and accidental." Hence, it seems plain that the

New York Court of Appeals' affirmance of *Technicon* did nothing to cast doubt on the district court's conclusion. Travelers therefore has a duty to defend the private actions.

### III  *Travelers' Duty to Defend the Administrative Proceeding*

Travelers' policy requires it to defend "any *suit* against the insured seeking *damages* on account of bodily injury or property damage." (emphasis supplied). Whether the administrative proceeding is a suit and whether the remedial costs expended by the State of Louisiana that potentially may be assessed against Avondale are damages—within the meaning of the policy—are the remaining questions that we must answer. Appellant Travelers and amicus American Motorists Insurance Company (AMICO) argue that the proceeding is not a "suit" as the term is commonly understood under an insurance policy, and that costs are not damages. The district court came to a contrary conclusion. *See* 697 F.Supp. at 1318–20 (damages), 1320–23 (suit).

#### A.  *Suit*

██  We have little trouble viewing this administrative proceeding as a suit. The demand letter commences a formal proceeding against Avondale, advising it that a public authority has assumed an adversarial posture toward it, and that disregard of the DEQ's demands may result in the loss of substantial rights by Avondale. These strike us as the hallmarks of litigation, and are sufficiently adversarial to constitute a suit under New York law and within the meaning of the policy.

New York appears to have adopted a broad construction of the word "suit." Before arbitration was included within the meaning of suit by the insurance industry, New York's highest court held that suit included arbitration, reasoning that the insurer was aware that arbitration might be directed when it wrote the policy. *See Madawick Contracting Co. v. Travelers Ins. Co.*, 307 N.Y. 111, 119, 120 N.E.2d 520 (1954). Plainly, Travelers as an insurer

was aware of the possibility of a suit regarding toxic chemicals as shown by the pollution exclusion clause it included in the policy it drafted.

Although the Appellate Division in *Technicon* held that the EPA administrative letter demand in that case was not a suit, 141 A.D.2d at 145–46, the Court of Appeals did not reach or decide the issue, 74 N.Y.2d at 76, 544 N.Y.S.2d 531, 542 N.E.2d 1048. Again, *Technicon* is distinguishable on this issue too. There, in the Appellate Division's own words, "[t]he EPA letter ... merely informed Technicon of its potential liability under CERCLA and that the EPA was interested in discussing Technicon's voluntary participation in remedial measures. The letter was an invitation to voluntary action...." 141 A.D.2d at 146. A request to participate voluntarily in remedial measures is not the same as the adversarial posture assumed in the coercive demand letter that Avondale received in the instant case.

Further, common sense argues that for Travelers to proffer a defense now is better for it, Avondale, and the public interest in a prompt cleanup of the hazardous waste. A judicial proceeding—were Avondale to ignore the DEQ letter—plainly will sharply escalate the liability costs Avondale faces. Fundamental issues involved in the administrative proceeding will obviously affect the extent of contribution of the various generators of the waste. A 1987 Report of the Association of State Waste Management Officials found in the record indicates—consonant with what experience teaches—that a private remedial effort is quicker and less expensive than a government sponsored program. *See Developments—Toxic Waste Litigation*, 99 Harv. L.Rev. 1458, 1505 (1986).

#### B.  *Damages*

██  Having concluded that the administrative proceeding is a suit, we turn next to damages. In New York, the terms of an insurance policy have long been accorded "a natural and reasonable meaning," *Doyle v. Allstate Ins. Co.*, 1 N.Y.2d 439, 443, 154 N.Y.S.2d 10, 136 N.E.2d 484 (1956), corre-

sponding to "the reasonable expectation and purpose of the ordinary businessman." *Ace Wire & Cable Co. v. Aetna Casualty & Sur. Co.*, 60 N.Y.2d 390, 398, 469 N.Y.S.2d 655, 457 N.E.2d 761 (1983); *see Bird v. St. Paul Fire & Marine Ins. Co.*, 224 N.Y. 47, 51, 120 N.E. 86 (1918). If there is uncertainty concerning its meaning, a policy is construed to embrace coverage. *Insurance Co. of No. Am. v. Dayton Tool & Die Works Inc.*, 57 N.Y.2d 489, 499, 457 N.Y.S.2d 209, 443 N.E.2d 457 (1982); *Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.*, 34 N.Y.2d 356, 361, 357 N.Y.S.2d 705, 314 N.E.2d 37 (1974); *accord National Grange*, 650 F.Supp. at 1408. When an insurer that drafts the instrument wants to exclude from coverage policy obligations it would otherwise assume, it must do so in clear and unmistakable language. *See Seaboard*, 64 N.Y.2d at 311, 486 N.Y.S.2d 873, 476 N.E.2d 272.

Travelers and amici strenuously urge that damages has a precise meaning related only to remedies at law, and thus precludes a duty to defend actions that sound in equity or propose only equitable relief. In particular, they cite two cases, *Continental Ins. Cos. v. Northeastern Pharmaceutical & Chem. Co.*, 842 F.2d 977 (8th Cir.) (en banc), *cert. denied*, —— U.S. ——, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988) (NEPACCO), and *Maryland Casualty Co. v. Armco, Inc.*, 822 F.2d 1348 (4th Cir.1987), *cert. denied*, 484 U.S. 1008, 108 S.Ct. 703, 98 L.Ed.2d 654 (1988). Both hold that, under Missouri and Maryland law respectively, the term damages does not include equitable relief—even when such is monetary—associated with a cleanup of a waste site under CERCLA. *NEPACCO*, 842 F.2d at 985–87; *Armco, Inc.*, 822 F.2d at 1352–54. They further argue that the Louisiana statute under which the DEQ demand was issued only permits the State to recover remedial and restorative expenses, relief that is equitable in nature. They assert therefore that the district court incorrectly held that the statute permitted the State to seek money damages in lieu of equitable relief. Travelers and amici conclude that under New York law remedial costs for the cleanup of a waste site do not constitute damages. We disagree.

Here the term damages is not defined in Travelers' policy. Damages not being given any more limited definition in the policy must be construed to include the remedial costs that may be imposed on Avondale by the State of Louisiana. Damages, as the district court said, may "include funds necessary for restoration of third parties' properties." 697 F.Supp. at 1319. In addition, a number of other courts have held that cleanup costs are damages under the same kind of policy. *See, e.g., Port of Portland v. Water Quality Ins. Syndicate*, 796 F.2d 1188, 1194 (9th Cir.1986) (policy covers equitable cleanup costs when interpreted according to usual meaning); *American Motorists Ins. Co. v. Levelor Lorentzen, Inc.*, No. 88–1994, slip op. at 7, 1988 WL 112142 (D.N.J. Oct. 14, 1988) (same result under New York law), *appeal dismissed*, 879 F.2d 1165 (3d Cir.1989); *accord United States Fidelity & Guar. Co.*, 683 F.Supp. 1139, 1168 (W.D.Mich.1988); *Dayton Indep. School Dist. v. National Gypsum Co.*, 682 F.Supp. 1403, 1411 n. 24 (E.D.Tex.1988); *Centennial Insur. Co. v. Lumbermens Mut. Casualty Co.*, 677 F.Supp. 342, 349–50 (E.D.Pa.1987).

We believe therefore that inasmuch as appellee might be held liable for cleanup costs, appellant was obliged to defend. Moreover, viewed from the insured's perspective, we think an ordinary businessman reading this policy would have believed himself covered for the demands and potential damage claims now being asserted in the DEQ administrative proceeding, *see Allstate Ins. Co. v. Klock Oil Co.*, 73 A.D.2d 486, 489, 426 N.Y.S.2d 603 (4th Dept.1980), particularly absent any specific exclusionary language in the policy.

## C. Indemnification

Travelers has also raised the question of indemnification or contribution from other insurers arguing that it is an excess carrier with respect to at least two other insurers. The district court did not rule on this issue, only requiring Travelers to defend. As Avondale had the clear right to choose which insurance company it would name as a defendant, regardless of whatever rights

Travelers may have to demand defense costs from the other carriers, we need not and do not on this appeal adjudicate Travelers' rights against the third-party defendants.

## CONCLUSION

For all the reasons stated above, the judgment appealed from is affirmed.