1997 ME 83

CENTRAL MAINE POWER COMPANY

v.

Ernest A. MOORE, et al.

Supreme Judicial Court of Maine.

Argued Sept. 4, 1996.

Decided April 22, 1997.

John W. Fried (orally), Eugene R. Anderson, Joan L. Lewis, Anderson, Kill & Olick, P.C., New York City, and Philip C.

Johnson, William H. Laubenstein, III, Johnson, Webbert & Laubenstein, Augusta, ME, for plaintiff.

Andrew H. Marks (orally), Mary C. Bryson, Todd Hutchen, Crowell & Moring, Washington, DC, and James E. Kaplan, Julianne Cloutier, Jensen, Baird, Gardner & Henry, Portland, ME, for CIGNA Specialty and Century Indem.

Stephen C. Ascher (orally), Lard, Bissell & Brook, Chicago, IL, and Timothy C. Woodcock, Weatherbee, Woodcock, Burlock & Woodcock, Bangor, ME, for Ernest Moore and other Lloyd's names.

Doris Harnett, Cuddy & Lanham, Bangor, ME, and James P. Schaller, M. Elizabeth Medaglia, Richard W. Bryan, Donald L. Uttrich, Jackson & Campbell, Washington, DC, and Brian J. Coyle, Victor C. Harwood, III, Harwood Lloyd, Hackensack, NJ, for American Home, Birmingham Fire, Lexington, and National Union Fire.

Carl F. Rella, Anne–Marie L. Storey, Rella, Dostie & Tucker, P.A., Bangor, ME, and Gregory A. Krauss, Michelle Melin, Carr, Goodson & Lee, P.C., Washington, DC, for Continental/Harbor/Greenwich.

Frederick C. Moore, Gregory E. Smith, Robinson, Kriger & McCallum, Portland, ME, and Jordan M. Sklar, Scheft & Scheft, New York, NY, for Highlands Ins.

Thomas Schulten, Perkins, Thompson, Hinckley & Keddy, Portland, ME, for Allstate/Northbook.

John R. Linnell, Linnell, Choate & Webber, Auburn, ME, for AEGIS.

Alan S. Rutkin, John L. Rivkin, Peter P. McNamara, Anthony R. Gambardella, Rivlin, Radler & Kremer, Uniondale, NY, for Allstate/Northbook and AEGIS.

Theodore H. Kurtz, South Paris, ME, and Robert Marc Chemers, Daniel G. Willis, Pretzel & Stouffer, Chicago, IL, for Ranger Ins.

John C. Montgomery, Bernstein, Shur, Sawyer & Nelson, Portland, ME, and Gregory P. Deschenes, Dennis W. Duggan, Peabody & Brown, Boston, MA, for First State & Twin City Fire.

Mark G. Furey, Thompson, McNaboe, Ashley & Bull, Portland, ME, for American Re–Ins., Executive Re–Indem., American Excess.

R. Paul Roecker, Lori H. Watson, Fitzhugh & Associates, Boston, MA, for Home Ins.

Willard D. Pease, Crandall, Hanscom, Pease & Collins, Rockland, ME, and Vincent E. Reilly, McElroy, Deutsch & Mulvaney, Morristown, NJ, for International Surplus Lines.

Martha C. Gaythwaite, Friedman & Babcock, Portland, ME, and Timothy G. Reynolds, William J. Wright, Jr., Adam C. Rosenberg, Skadden, Arps, Slate, Meagher & Flom, New York City, for North Star Reinsurance.

John J. Wall, III, Christopher C. Dinan, Monaghan, Leahy, Hochadel & Libby, Portland, ME, and Allan Taylor, Taylor, Anderson & Travers, Boston, MA, for Unigard Security.

Severin M. Beliveau, Stephen E.F. Langsdorf, Preti, Flaherty, Beliveau & Pachios, LLC, Augusta, ME, and Stephen D. Strauss, Traub Eglin Lieberman Strauss, Hawthorne, NY, for Northwestern National.

Andrew Ketterer, Attorney General, Dennis J. Harnish, Asst. Atty. Gen., Augusta, ME, Andrew M. Horton, Verrill & Dana, Portland, ME, and Daniel E. Troy, Wiley, Rein & Fielding, Washington, DC, amici curiae for Insurance Environmental Litigation Association.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN and LIPEZ, JJ.

CLIFFORD, Justice.

[¶ 1] Central Maine Power Company (CMP) appeals from the summary judgment entered in the Superior Court (Kennebec County, Alexander J.), in favor of the defendant insurers'[1] on CMP's complaint seeking

---

1. The following parties are defendants in this appeal: Affiliated Factory Mutual Insurance

Company, Allstate Insurance Company (successor in interest to Northbrook Excess & Surplus

a declaratory judgment that the insurers had a duty to indemnify CMP for costs that it incurred in cleaning up environmental damage occurring at a salvage yard in Augusta. Because we agree with CMP's contentions regarding one of the three different types of policies, we vacate in part the summary judgment. Being evenly divided with respect to the other two types of policies, we affirm the remainder of the summary judgment.

[¶ 2] Between 1952 and 1978, CMP sold for recycling used electrical equipment including transformers to the F. O'Connor Company (O'Connor) salvage yard in Augusta. During the recycling performed at the yard, oil containing polychlorinated biphenyls (PCBs) drained into the ground. On September 9, 1983, the United States Environmental Protection Agency (EPA) placed the site on the National Priorities List of sites eligible for Superfund money. In April 1985, the EPA, pursuant to the Comprehensive Environmental Response and Liability Act (CERCLA),[2] named CMP a potentially responsible party [3] (PRP) for the environmental damage at the salvage yard because CMP had arranged for disposal of hazardous substances on the property. CMP did not own the property at this time.

[¶ 3] On May 13, 1986, CMP entered into an administrative consent order with the EPA. CMP agreed to investigate and prepare a feasibility study for restoring the site and an evaluation of alternatives for remedial action. CMP then entered into a consent order with the Maine Department of Environmental Protection (DEP) on June 23, 1986, agreeing to remove the current threat to the land and to conduct and prepare a study. In 1987, pursuant to an amended order with both the EPA and DEP, CMP agreed to conduct additional field investigations and take other remedial measures. In addition, the United States sued CMP in federal court on behalf of the EPA for costs already incurred by the EPA in investigating and remediating the salvage yard. Pursuant to a consent decree, CMP agreed to perform all work and reimburse the United States for costs it had incurred in dealing with the site.

[¶ 4] CMP contends that its costs to comply with the consent decrees to remediate the site are covered by the insurers' policies. CMP is partially self-insured for amounts ranging between $10,000 and $1,000,000. In addition, CMP purchased from a number of different insurance companies three types of policies that are at issue in this case. The Superior Court provided examples of the three policies in its opinion. The first category of policies, designated as "Type I" policies, provides indemnity

> (a) For any and all sums which the Assured shall by law become liable to pay and shall pay or by final judgment be adjudged to pay as damages to any person or persons (excluding employees injured in the course of their employment) for per-

Insurance (formerly Northbrook Insurance Company)), American Home Assurance Company, American Re–Insurance and Executive Re–Indemnity Inc. and American Excess Insurance Company, Associated Electric & Gas Insurance Services Limited, Birmingham Fire Insurance Company of Pennsylvania, Century Indemnity Company (as successor to both Insurance Company of North America and CIGNA Specialty Insurance Company), Ernest A. Moore, et al., First State Insurance Company, Harbor Insurance Company (d/b/a Greenwich Insurance Company) and Columbia Casualty Company, Highlands Insurance Company, Home Insurance Company, International Insurance Company (as successor in interest to International Surplus Lines Insurance Company), Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, North Star Reinsurance Corporation, Northbrook Insurance (successor in interest to Allstate Insurance Company), Ranger Insurance Company, Twin City Fire Insurance

Company, Unigard Mutual Insurance Company, Unigard Security Insurance Company, and Westport Insurance (formerly known as Puritan Insurance Company). Northwestern National Insurance Company has a pending motion to dismiss in the Superior Court. Also, Southern American, listed as one of the original defendants, is in liquidation. Neither filed a brief to this Court.

2. 42 U.S.C. §§ 9601–9675 (1995).

3. CERCLA provides liability for owners or operators of facilities or vessels, people who at the time of disposal owned them, and for any "person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person...." 42 U.S.C. §§ 9607(a)(1)–(3) (1995).

sonal injury sustained including death at any time resulting therefrom (hereinafter called "Public Liability").

(b) For any and all sums which the Assured shall by law become liable to pay and shall pay or by final judgment be adjudged to pay by reason of damage to or destruction of property including consequential loss, other than property owned by the Assured (hereinafter called "Property Damage.")

. . . .

by reason of any and all operations undertaken by the Assured.

CMP also purchased two other types of policies.[4]

[¶ 5] After each of the individual insurers stipulated to the policy language in their respective insurance contracts, the Superior Court granted the insurers' motion for a summary judgment based on the language of the policies and our holding in *Patrons Oxford Mut. Ins. Co. v. Marois*, 573 A.2d 16 (Me.1990). CMP subsequently filed this appeal.

■ [¶ 6] When a party appeals from an order granting a motion for a summary judgment, we view the evidence in the light most favorable to the party against whom the judgment was entered to determine whether the record supports the trial court's conclusion that there is no genuine issue of material fact, and the movant is entitled to a judgment as a matter of law. *Simpson v. Central Maine Motors, Inc.*, 669 A.2d 1324, 1325–26 (Me.1996).

[¶ 7] Our task is to determine the meaning of the private insurance contracts before us. *Patrons Oxford Mut. Ins. Co. v. Marois*, 573 A.2d at 17. In *Patrons Oxford*, we held that an insurance contract stating that the insurer will pay "all sums which the insured shall become legally obligated to pay as dam-

ages because of . . . property damage. . . ." covered amounts that may be awarded against an insured for damage to a third party's property. *Id.* at 18. The insured had expended only legal defense costs arising out of a DEP proceeding regarding leakage from a fuel company's underground gasoline storage tanks on the insured's premises. We held that no coverage existed as a matter of law pursuant to the language of the particular policy because no legal damage to any third party's property had occurred. We also concluded that no ambiguity existed in the phrase "as damages" because "[a]mbiguity . . . is created only by controverting an insured's hope or assumption that every out-of-pocket payment is covered into a part of the contract language." *Id.* at 19.

[¶ 8] We agree with CMP that the language of the Type I policies is different from the language of the policy present in *Patrons Oxford* and that coverage is not precluded by our holding in that case. Although CMP bought the O'Connor property in 1992 for purposes of remediation, CMP did not own it when the environmental damage to the site occurred.[5] The Type I policies provide coverage for sums that the insured is liable to pay "by reason of damage to or destruction of property. . . ." The word "damage" contained in the policy language does not modify the word "pay" but instead describes the state of the property.[6] The limiting language "as damages" that precluded coverage in *Patrons Oxford* is absent from the Type I policies. We stated in that case that "[o]nly by completely eliminating the phrase 'as damages' can coverage be found. The contract would then require the insurer to 'pay on behalf of the insured all sums which the insured shall become legally obligated to pay . . . because of . . . property damage.' That would support coverage. . . ." *Id.* at 19 n. 7. The phrases "pay by reason of damage to

---

4. These policies, categorized by the court as "Type II" and "Type III" policies, insured for "damages," "expenses," and "ultimate net loss." Because we are evenly divided on the meaning of these policies, we do not address them in this opinion.

5. If CMP had owned the property, presumably it would be excluded from coverage under owned property exclusions in the policies.

6. The difference can be seen clearly by comparing the "Public Liability" and "Property Damage" sections of the Type I policies. The former contains the "as damages" limitation while the latter does not. See supra p. 3.

property" and "pay because of property damage" are functionally identical. Because the "as damages" language does not exist in the Type I policies, the insurers who issued them are not entitled to judgment as a matter of law on that ground.[7] Accordingly, we vacate the judgment as it pertains to Type I policies.

The entry is:

Judgment affirmed as to the Type II and Type III policies. Judgment vacated as to the Type I policies. Remanded to the Superior Court for further proceedings consistent with the opinion herein.

---

**7.** The insurers argue that the phrase "shall by law become liable to pay" conveys the same concept as "as damages." We do not agree. That phrase does not contain the limitation that the payment be made to a third party whose property has been damaged. Indeed, in *Patrons Oxford*, we concluded that "as damages," and not the phrase "shall become legally obligated to pay" controlled coverage under the insurance contract. *Id.* at 19 & n. 7.