**OGDEN CORPORATION, Avondale Industries, Inc. and Connell Limited Partnership, Plaintiffs,**

v.

**The TRAVELERS INDEMNITY COMPANY and American Motorists Insurance Company, Defendants.**

**The TRAVELERS INDEMNITY COMPANY, Third–Party Plaintiff,**

v.

**EMPLOYERS INSURANCE OF WAUSAU, a Mutual Company, and National Union Fire Insurance Company, Third–Party Defendants.**

**No. 88 Civ. 4269 (RPP).**

United States District Court,
S.D. New York.

June 5, 1990.

Fryer, Ross & Gowen by Hugh N. Fryer, New York City, for plaintiffs.

Simpson Thacher & Bartlett by Seth Ribner, New York City, for defendant Travelers Indem. Co.

Drinker Biddle & Reath by James M. Sweet, Philadelphia, Pa., for American Motors Ins. Co.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

By Opinion and Order dated February 26, 1990, 731 F.Supp. 143, the Court granted plaintiffs' motion for a rehearing and reconsideration of the Court's grant of summary judgment in favor of defendant The Travelers Indemnity Company ("Travelers").[1] The parties appeared for reargument on March 7, 1990. The Court is asked to reconsider its holding, following *Technicon Electronics Corp. v. American Home Assurance Co.*, 74 N.Y.2d 66, 542 N.E.2d 1048, 544 N.Y.S.2d 531, *reconsideration den.*, 74 N.Y.2d 893, 547 N.E.2d 105, 547 N.Y.S.2d 851 (1989), that the "sudden and accidental" exception to the Travelers policy's "pollution exclusion" clause does not apply in this case.

The Court has considered plaintiffs' arguments that the decision to grant partial summary judgment to Travelers was incorrect, and has considered the New York Court of Appeals and Second Circuit decisions relevant to this issue handed down since the Court's earlier decision. *See EAD Metallurgical, Inc. v. Aetna Casualty & Surety Co.*, 905 F.2d 8 (2d Cir.1990); *Avondale Industries, Inc. v. Travelers Indemnity Co.*, 887 F.2d 1200 (2d Cir.1989), *reh'g denied*, 894 F.2d 498 (2d Cir.1990) (per curiam); *Powers Chemco, Inc. v. Fed-*

---

1. Familiarity with the earlier opinions is assumed for purposes of this discussion.

*eral Insurance Co.*, 74 N.Y.2d 910, 548 N.E.2d 1301, 549 N.Y.S.2d 650 (1989); *A. Meyers & Sons Corp. v. Zurich American Insurance Group*, 74 N.Y.2d 298, 545 N.E.2d 1206, 546 N.Y.S.2d 818 (1989). The Court concludes that its earlier holding that the underlying complaint "cannot reasonably be read as claiming that the discharges from Luria's facility were accidental," or sudden, is still correct.

### 1. Travelers' Duty to Defend

The panels in *EAD* and *Avondale* reached opposite conclusions based on their analyses of the different allegations in the respective complaints. In *Avondale*, the insured was one of 70 defendants in the underlying action, and was not the operator of the polluted site but was alleged only to have sold salvage oil to the operator of the site, who transported it to the site and stored it. The complaint charged all of the defendants with insufficient containment measures, with generating hazardous waste, with knowledge of the presence of toxins, and with culpability for escape of hazardous materials. The court found the complaint "did not allege how the discharge escaped, nor what Avondale did to contribute to the seepage," 887 F.2d at 1205.

In *EAD*, by contrast, there were specific allegations that the insured, through the operation of its plant, "caused the release" of wastes "by disposing or arranging for the disposal of" the wastes into sewer lines, and alleged that the insured acted "wrongfully, willfully and illegally ... by causing, implementing, creating, generating, injecting and inflicting radioactive contamination."[2] Similarly, in *Powers Chemco*, it was alleged that the insured buried,

dumped and discharged pollutants into the environment.

In *Avondale*, the Circuit Court distinguished *Technicon* and held it was not clear that the insured had "continuously and intentionally polluted," and there were no other allegations that "clearly negate[d]" the possibility that the discharges were "sudden and accidental." This holding is consistent with decisions of other courts in interpreting the duty to defend under the "sudden and accidental" exception, in cases of discharge from underground tanks. *See, e.g., Colonie Motors, Inc. v. Hartford Acc. & Indem. Co.*, 145 A.D.2d 180, 538 N.Y.S.2d 630, 632 (3d Dep't 1989). The *EAD* panel, relying on *Powers Chemco*, held that the underlying complaint left "no question that, unlike the defendants in *Avondale*, appellants are alleged to have 'continuously and intentionally polluted.'" The Court further stated that, "[a]s in *Powers Chemco* the present pollution damage, 'resulting from purposeful conduct, cannot be considered 'accidental.'" At 11.

Factually, this case falls between *Avondale* and *EAD*.[3] The underlying complaint alleges that Luria's "scrap metal processing and storage operations, and LURIA'S other industrial operations" on the site "proximately caused hazardous substances to be released onto the subject property and contaminate the soil of the subject property," and that "said contamination occurred continuously during the years 1950 through 1983." Unlike the complaint in *Avondale*, these allegations tend to negate the possibility that the discharges were both sudden and accidental; but unlike *EAD* and *Powers Chemco*, there are no specific allegations of the exact manner in

**2.** The district court opinion in *EAD* describes the complaint as alleging "that the disposal of americium–241 took place throughout EAD's seven years of operation (¶¶ 8 & 10), that there was contamination and continued contamination (¶ 28), that there was continued presence and migration of americium–241, (¶ 32), that the defendants caused and continue to cause a public nuisance (¶ 48) and that after EAD ceased to operate it repeatedly ignored New York's Department of Labor's administrative orders to decontaminate the site (¶¶ 18–21)."

**3.** The complaint states five claims for relief: The First Count is for recovery of response costs under CERCLA; the Second Count is for recovery of response costs under California Health & Safety Code section 25300, *et seq.*; the Third Count is for breach of a lease contract; the Fourth Count is for waste (and treble damages for willful and malicious abuse of the subject property); and the Fifth Count is for negligence.

which the discharges occurred, the nature of the contaminating materials, or that the insured acted intentionally, although there is no dispute that Luria's scrap metal processing and storage operations and other industrial operations constituted intentional conduct.

On this motion, plaintiffs assert that, in addition to Luria's continuous scrap metal processing and storage operations, there were in fact other, unspecified causes of the pollution of the site in question including leakage from underground storage tanks, lined sludge from cesspools, and buried drums. If anything has been made clear by the recent case law, however, it is that, in determining the insurer's duty to defend, the Court must only consider the allegations of the complaint.[4] In *EAD* and *Avondale*, which were both written by Judge Cardamone, the Second Circuit reiterated that the duty to defend is triggered by " 'any allegations [in the underlying complaint] that arguably or potentially bring the action within the protection purchased' or a 'reasonable possibility' that coverage exists." *EAD*, at 11 (quoting *Avondale* ). *See also A. Meyers & Sons Corp.*, 545 N.E.2d at 1208, 546 N.Y.S.2d at 820 ("The duty of a liability insurer to defend an action ... is determined by the allegations in the complaint"); *Servidone Const. Corp. v. Security Ins. Co.*, 64 N.Y.2d 419, 477 N.E.2d 441, 444, 488 N.Y. S.2d 139, 142 (1985) ("The duty to defend is measured against the allegations of the pleadings"). Thus, an insured's claim that it is able to show that some portion of the pollution at the site may have been caused by a sudden and accidental discharge is essentially irrelevant if the complaint cannot reasonably be read as alleging that one or more of the discharges were sudden and accidental. The complaint here charges that the contamination occurred continuously during the years 1950 through 1983, and there are no allegations in the instant complaint that arguably or potentially bring the action within the protection purchased.

Plaintiffs assert that the complaint is not inconsistent with a scenario in which numerous sudden accidents caused the pollution at the site. As a preliminary matter, the Court notes that this is true of the complaints in *EAD, Powers Chemco* and *Technicon*, in which the courts held there was no duty to defend. While it is always true that what actually occurred conceivably could have involved a sudden and accidental discharge, the duty to defend, as noted above, is based on a reasonable interpretation of the allegations of the complaint.

Having drawn all reasonable inferences from the complaint in this case in favor of plaintiffs, the Court reiterates its earlier holding that "[c]ontinuous discharges caused by intentional operations over a thirty-three year period cannot be construed to be accidental." 739 F.Supp. 796, 799. Furthermore, the Court sees no reasonable interpretation of the word "sudden" that comports with an allegation that the "contamination occurred continuously during the years 1950 through 1983."[5] In particular, this allegation of *continuous* contamination is inconsistent with plaintiffs' contention that the contamination may have been the result of one or more *sudden* discharges or escapes. *See United States Fidelity and Guaranty v. Star Fire Coals, Inc.*, 856 F.2d 31 (6th Cir.1988) (court finds it "impossible" to characterize discharges of coal dust on an ongoing basis for seven or eight years as "sudden"). Because of this allegation, this Court, unlike the district court in *Avondale*, is unable to say that the pollutants "may have ... escaped in a single incident," 697 F.Supp. 1314, 1317 (S.D.N.Y.1988), and therefore reiterates its prior holding that the complaint cannot reasonably be read as alleg-

---

**4.** In *Technicon,* the court partially based its decision on the insured's answer to the underlying complaint.

**5.** In *Powers Chemco,* the New York Court of Appeals reiterated its *Technicon* holding that the exception to the pollution exclusion clause is operative only if the discharge was *both* sudden and accidental. 548 N.E.2d at 1302, 549 N.Y. S.2d at 651.

ing that the contamination occurred as a result of "sudden" discharges.[6]

Plaintiffs also argue that Travelers has represented to plaintiffs and to insurance regulators that the "sudden and accidental" language in its policies is equivalent to "unexpected and unintended" and covers gradual discharges, and that there are issues of fact with respect to the allegedly unique way Travelers construes the words "sudden and accidental." The Court did not deal with this argument in its previous opinion because the *Technicon* decision made clear that the "sudden and accidental" exception to the pollution exclusion clause is unambiguous. *See also Powers Chemco*, 548 N.E.2d at 1302, 549 N.Y.S.2d at 651. Where the relevant terms of a contract are unambiguous, the intent of the parties is established from those terms alone, and resort to extrinsic evidence is unnecessary. *See Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir.1985).

■ In their *reply* brief in support of their motion for a rehearing and reconsideration, plaintiffs argue for the first time that two equitable doctrines, equitable estoppel and judicial estoppel, should be invoked by the Court to prevent Travelers from arguing that "sudden and accidental" does not mean "unexpected and unintended." These legal arguments are not properly raised at this late date. Motions for reargument are for the purpose of notifying the court of "matters or controlling decisions which counsel believes the court has overlooked," Local Civil Rule 3(j), not raising legal theories counsel failed to raise previously. *See also Natural Resources Defense Council, Inc. v. United States Environmental Protection Agency*, 705

F.Supp. 698, 701–02 (D.D.C.) ("Rule 59(e) motions are not vehicles for bringing before the court theories or arguments that were not advanced earlier"), *vacated*, 707 F.Supp. 3 (D.D.C.1989); *Sims v. Mme. Paulette Dry Cleaners*, 105 Lab.Cas. (CCH) ¶ 34,845 at 44,648, 1986 WL12511 (S.D.N.Y.1986) ("it is not the intention of Rules 52(b) and 59 to allow parties to relitigate old matters or to present their case under new theories"). *See also Nassau–Suffolk Ice Cream, Inc. v. Integrated Resources, Inc.*, 683 F.Supp. 452, 454 (S.D.N.Y.1988) (motions under Rule 60(b) are "not a substitute for appeal and may not be used to relitigate the basis of the prior order."). Plaintiffs had ample opportunity previously to proceed on these equitable theories but did not do so. For this reason, plaintiffs' motion is denied.

■ Moreover, equitable estoppel is inappropriate here. Plaintiffs argue that Travelers should be equitably estopped from asserting a position inconsistent with statements allegedly made by a Travelers employee to plaintiffs that there is little difference between "sudden and accidental" and "unexpected and unintended." However, application of the doctrine of equitable estoppel requires, *inter alia*, a showing by the insured of "(1) lack of knowledge of the true facts; (2) reliance on the conduct of ... the party to be estopped; and (3) a prejudicial change in position." *Stutelberg v. Farrell Lines, Inc.*, 529 F.Supp. 566, 569 (S.D.N.Y.), *aff'd*, 697 F.2d 297 (2d Cir.1982). Plaintiffs have not argued that they relied on the alleged statements or that they made any prejudicial change in their position.[7]

---

**6.** Plaintiffs also argue that the existence of a negligence cause of action in the complaint requires the Court to hold that the complaint alleges sudden and accidental discharges. The negligence claim alleges, in pertinent part, that "LURIA's actions in the operation of its scrap metal processing and storage facility and other industrial operations on the subject property constitute a negligent breach of LURIA's legal duty." The only "action" alleged is the continuous and undoubtedly intentional operation of the scrap metal operations for 33 years. The fact that Luria may have conducted its *opera-*

*tions* in negligent breach of a legal duty does not support the conclusion that one or more *discharges* were both sudden and accidental. Furthermore, the presence of this negligence claim as so alleged tends to support and in no way contradicts the complaint's allegations that the contamination was ongoing and continuous, and therefore non-sudden.

**7.** To the extent that plaintiffs seek discovery into this matter, their request is untimely.

Plaintiffs' argument that the doctrine of judicial estoppel should be applied to prevent Travelers from taking a position in this case inconsistent with positions it has taken in other matters is also not only untimely but unsubstantiated. Specifically, plaintiffs argue that Travelers obtained approval of its pollution exclusion clause in West Virginia because of a letter by Richard Reeves of Travelers to the West Virginia Insurance Commissioner dated August 3, 1970, in which Mr. Reeves stated his belief that the results of the phrases "sudden and accidental" and "not expected or intended" are the same. The Court does not believe that this circumstance rises to the level of "playing fast and loose with the courts," the evil judicial estoppel is meant to address. *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598–99 (6th Cir.1982) (quoting *Scarano v. Central R. Co.*, 203 F.2d 510, 512–13 (3d Cir.1953)); *see also Long Island Lighting Co. v. Transamerica Delaval, Inc.*, 646 F.Supp. 1442, 1447 (S.D.N.Y.1986). The phrase "sudden and accidental" as used in this context has been the subject of extensive litigation and judicial interpretation by the courts since 1970, including the New York Court of Appeals. The Court is not inclined to depart from the interpretation given to this language by the New York Court of Appeals by invoking the doctrine of judicial estoppel here.[8]

### 2. Travelers' Duty to Indemnify

■ Finally, plaintiffs argue, again for the first time, that the absence of a duty to defend plaintiffs in the underlying action does not necessarily resolve the question of Travelers' duty to indemnify. Travelers argues that, since the duty to indemnify is narrower than the duty to defend, where there is no duty to defend, summary judgment is appropriate with respect to both defense and immunity.

In *Travelers Ins. Co. v. Waltham Industrial Laboratories Corp.*, 883 F.2d 1092 (1st Cir.1989), the First Circuit was faced with a situation similar to the one presented here: there was no duty to defend based on the allegations of the complaint, and the underlying case had been settled. The court noted that the duty to indemnify is determined by the actual facts, rather than the pleadings. The insured had raised an issue of fact as to whether one instance of pollution at the site, which was not within the scope of the underlying complaint, was sudden and accidental. The court inferred that the expense of curing this unpleaded contamination "was a factor considered in the settlement" of the underlying case, and therefore held that summary judgment as to the duty to indemnify was inappropriate.

Here, the underlying case has also been settled, but plaintiffs do not suggest, nor could one infer from the record on these cross-motions for summary judgment, that the settlement resolved matters outside the pleadings for which Travelers owes a duty to indemnify. This is not to say that Travelers is not required to indemnify plaintiffs if they indeed have become liable for sudden and accidental discharges which are otherwise covered by the policies. But that is not the question presented by the summary judgment motions before the Court. Here, the Court holds that Travelers had no duty to defend the underlying case and, since there was no allegation that plaintiffs have become liable for any sudden and accidental occurrences in addition to those alleged in the complaint, Travelers has no duty herein to indemnify plaintiffs for amounts they paid pursuant to that settlement.

Accordingly, plaintiffs' motion is denied.

SO ORDERED.

---

8. The phrase "unexpected and unintended" has also been the subject of considerable judicial interpretation. *See, e.g., Travelers Ins. Co. v. Waltham Industrial Laboratories Corp.*, 883 F.2d 1092 (1st Cir.1989).