**AMERICAN MOTORISTS INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**GENERAL HOST CORPORATION & American Salt Company, Inc., Defendants–Appellants.**

No. 88–1503.

United States Court of Appeals, Tenth Circuit.

March 21, 1991.

John Logan O'Donnell, of Olwine, Connelly, Chase, O'Donnell & Weyher, New York City (Michael L. Spafford and Rodney M. Zerbe, of Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, and Thomas D. Kitch and Ron Campbell, of Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., with him on the briefs), for defendants-appellants.

Timothy C. Russell, of Drinker Biddle & Reath, Washington, D.C. (Patricia A. Gotschalk and S. Elizabeth Doran, of Drinker Biddle & Reath, Washington, D.C., and M. Kathryn Webb of Morrison, Hecker, Curtis, Kuder & Parrish, Wichita, Kan., with him on the brief), for plaintiff-appellee.

Terry W. Schackmann, James T. Price, and Stephanie A. Matthews, of Spencer Fane Bitt & Browne, Kansas City, Mo., filed a brief for amici curiae American Petroleum Institute, Texas Instruments, Inc., Maremont Corp., McDonnell Douglas Corp., and Allied Signal Inc.

Thomas W. Brunner, James M. Johnstone, and Robert R. Lawrence, of Wiley, Rein & Fielding, Washington, D.C., filed a brief for amicus curiae Ins. Environmental Litigation Ass'n.

Before McKAY and EBEL, Circuit Judges, and WEST, District Judge.[*]

EBEL, Circuit Judge.

This case involves a dispute over the scope of coverage under four general liability insurance policies issued by plaintiff-appellee American Motorists Insurance Company ("AMICO") to defendants-appellants American Salt Company, Inc. and General Host Corporation (American Salt's corporate parent) for the period from November 1, 1981, to June 15, 1985. Defendants appeal from the district court's July 28, 1987 order declaring that AMICO has no obligations under those policies to indemnify defendants for the costs of defending, or for any damages awarded in, *Miller v. Cudahy Co.* and *Brothers v. American Salt Co.*—two underlying actions brought against defendants by neighboring landowners and lessees for losses suffered as a result of pollution caused by American Salt's business operations in Lyons, Kansas.

The following issues are raised on appeal: (1) whether the district court erred in granting summary judgment in favor of AMICO based on the collateral estoppel effect of findings of fact made in *Miller;* (2) whether the district court erred in concluding that there was no "occurrence" within the meaning of the insurance policies issued by AMICO; (3) whether the district court erred in granting summary judgment in favor of AMICO based on the pollution exclusion clause contained in the policies issued by AMICO; (4) whether the district court erred in concluding that AMICO had no duty to defend in *Miller;* (5) whether the district court erred in concluding that AMICO had no duty to defend or indemnify defendants in *Brothers;* and (6) whether the district court erred in not severing the claims against the two insureds, as allegedly required under the policies issued by AMICO. Because we conclude that the pollution at issue in both *Miller* and *Brothers* was not "accidental," we affirm the July 28, 1987 order of the district court granting summary judgment in favor of defendants. 667 F.Supp. 1423.

[*] The Honorable Lee R. West, of the United States District Court for the Western District of Oklahoma, sitting by designation.

*Facts*

This case concerns claims by neighboring landowners and lessees situated adjacent to American Salt's salt mining plant in Lyons, Kansas, for losses resulting from groundwater contamination caused by American Salt's operation of the plant. In 1977, more than forty landowners and lessees filed suit against Cudahy Company (of which American Salt was an operating division) and General Host Corporation (Cudahy's parent company). The neighbors were awarded $3.06 million in actual damages for the period from 1975 through 1983 and were awarded $10 million in punitive damages. This court affirmed the damages award on appeal (although the district court's award of certain post-trial expert witness fees was reversed). *Miller v. Cudahy Co.*, 858 F.2d 1449, 1458 (10th Cir. 1988), *cert. denied*, 492 U.S. 926, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989).

The second underlying action, *Brothers v. American Salt*, No. 84–1637–T (D.Kan. Dec. 18, 1989), was filed in 1984. The complaint filed in *Brothers* contained the following three causes of action: (1) an action for continued "inability to grow irrigated crops," Addendum of Defendants–Appellants, Exh. E, at 2; (2) an action for "damage to dryland crops," resulting from a process known as "capillary action," *Id.* at 3, ¶ 2;[1] and (3) an action for "wanton failure to abate" the pollution.[2] That case was eventually settled and was dismissed by the district court pursuant to Fed. R.Civ.P. 41(a)(1)(ii) in an order dated December 18, 1989. The district court in this case characterized *Brothers* as involving "essentially the same claims" as those raised in *Miller*. *American Motorists Ins. Co. v. General Host Corp.*, 667 F.Supp. 1423, 1425 (D.Kan.1987).

In 1984, AMICO filed this action against General Host and American Salt, seeking a declaratory judgment that it had no duty to defend or indemnify defendants for the groundwater contamination claims asserted in *Miller* and *Brothers*. On July 28, 1987, the district court issued an order granting summary judgment in favor of AMICO. The district court noted that the insurance policies contained an exclusion for damages caused by pollution, and that the exception to that exclusion for "sudden and accidental" discharges was not applicable to this case. The district court concluded that the language of the exclusion and its exception is "clear and plain," and that "[n]o use of the word 'sudden' or 'suddenly' could be consistent with an event which happened gradually or over an extended period of time...." *Id.* at 1428–29. The district court also concluded that coverage was barred because the policies covered only events that were not "expected or intended" by defendants. The court held that defendants "expected or intended" the damage to the landowners' property because, for many years, defendants knew that American Salt's operation at the Lyons, Kansas salt plant was resulting in considerable salt pollution. *Id.* at 1430.

The district court dismissed all of defendants' counterclaims on the ground that the summary judgment order rendered the counterclaims moot. Defendants filed a motion pursuant to Fed.R.Civ.P. 59(e) requesting the district court to vacate its prior orders. The district court denied that motion and entered final judgment. Defendants then appealed.

*Discussion*

We review the district court's order granting summary judgment de novo, applying the same standard as the district

---

1. According to the complaint, "[c]apillary action is a dynamic process whereby salt located beneath the surface and beneath the soil is drawn upwards by the process of evaporation called evapo-transpiration." Addendum of Defendants–Appellants, Exh. E, at 3, ¶ 3. Plaintiffs allege that as a result of this upward movement of salt, their ability to grow dry land crops was "adversely affected." *Id.* at 4, ¶ 6.

2. In August 1989, the district court in *Brothers* granted the plaintiffs' request for leave to amend their complaint. The amended complaint allegedly included additional claims for acts of pollution which took place after the period of time at issue in *Miller* and allegedly did not include a capillary action claim. *See* Brief of Defendants–Appellants at 14 n. *. The amended complaint, however, was never filed.

court under Fed.R.Civ.P. 56(c). *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230 (10th Cir.1990). Rule 56(c) provides that summary judgment is appropriate only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). We review the record in the light most favorable to the nonmoving party. *Id.*

The insurance policies at issue provide coverage for bodily injury or property damage caused by an "occurrence," which is defined as "an accident or a happening or event or a continuous or repeated exposure to conditions which results, during the policy period, in bodily injury or property damage *neither expected nor intended from the standpoint of the insured.*" Addendum of Defendants–Appellants, Exh. C, Amendatory Endorsement 1, at 1 (emphasis added). The policies at issue also contain a standard-form pollution exclusion, which provides in relevant part:

> This policy does not apply: ... to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is *sudden and accidental ....*

Addendum of Defendants–Appellants, Exh. C, at 3, 5 (emphasis added).

I. *Preclusive Effect of Findings Made in the Miller Case*

Defendants make a general challenge to the district court's decision to accord preclusive effect to the findings of fact made in *Miller.* In particular, defendants argue that Kansas collateral estoppel law applies here and that Kansas law, unlike federal law (*see Parklane Hosiery v. Shore*, 439 U.S. 322, 329, 99 S.Ct. 645, 650, 58 L.Ed.2d 552 (1979)), does not permit the nonmutual use of collateral estoppel—in which a plaintiff seeks to preclude a defendant from relitigating issues which the defendant pre-

viously had litigated and lost against another plaintiff. *See Adamson v. Hill*, 202 Kan. 482, 449 P.2d 536, 539–40 (1969).

At the present time, there appears to be some doubt within the Tenth Circuit as to whether federal or state rules of collateral estoppel, i.e., issue preclusion, apply in successive diversity actions. In *Federal Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 386 (10th Cir.1987), this court implicitly recognized that state law is to be applied in cases involving issue preclusion. However, less than one year later, the court in *Petromanagement Corp. v. ACME–Thomas Joint Venture*, 835 F.2d 1329 (10th Cir. 1988), adopted the language of the Second Restatement of Judgments, which holds that "the basic rules of claim and issue preclusion.... should be determined by a federal rule." *Id.* at 1333 (quoting Restatement (Second) of Judgments (1982) § 87 comment b, at 317).

Because *Petromanagement* involved claim preclusion—not issue preclusion—at least one court has attempted to reconcile these two cases by concluding that federal law applies for claim preclusion and state law applies for issue preclusion. *Columbia Cas. Co. v. Playtex FP, Inc.*, 584 A.2d 1214 (Del.Supr.Ct.1991) (applying law of the Tenth Circuit). Although possible, such a distinction does not appear logical and can only serve to produce confusion and error. At some point, the Tenth Circuit must determine what preclusion law is to be applied in successive diversity actions. We suspect that, like several other circuits, the Tenth Circuit will affirm the language of *Petromanagement* and the Restatement and apply federal preclusion law except where the matter is distinctively substantive. *See Precision Air Parts, Inc. v. Avco Corp.*, 736 F.2d 1499, 1503 (11th Cir.1984), *cert. denied*, 469 U.S. 1191, 105 S.Ct. 966, 83 L.Ed.2d 970 (1985); *Southern Pac. Transp. Co. v. Smith Material*, 616 F.2d 111, 115 (5th Cir.1980). *See also Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 42 n. 3 (2d Cir.1986), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987). *But see Lane v. Sullivan*, 900 F.2d 1247, 1249–50 (8th Cir.), *cert. denied*, — U.S. —,

111 S.Ct. 134, 112 L.Ed.2d 101 (1990) (collateral estoppel in a diversity action is a question of substantive law controlled by state common law).

■ In any event, such a determination is not necessary to resolve this case. We believe that under Kansas law AMICO would not be required to relitigate factual issues already considered in *Miller*. As noted by appellants, Kansas courts have recognized that claim or issue preclusion may be asserted by one who was in privy with a party to the previous suit. *Adamson*, 449 P.2d at 541. In the case of *Patrons Mut. Ins. Ass'n. v. Harmon*, 240 Kan. 707, 732 P.2d 741 (1987), the Kansas Supreme Court held that a liability insurer that *did not* provide a defense to its insured *was* a "privy" to the insured and thus was collaterally estopped from relitigating factual issues decided in the liability action. *Id.* 732 P.2d at 744. According to the Kansas Supreme Court, the insurance company—as a privy to the insured in the earlier action—"was bound by or entitled to claim the benefits of . . . any matter decided in the action." *Id.*

In the case at hand, AMICO was similarly situated with regard to the insured. Thus, by being in privity with General Host, AMICO fulfilled the requirements of mutuality under Kansas law. Therefore, whether based on federal or state preclusion law, the district court's decision to accord preclusive effect to the findings of fact in *Miller* was correct.

## II. *The Duty to Defend*

The policies at issue in this case provide that plaintiff "shall have the right and duty to defend any suit against the insured alleging . . . injury or property damage" to which the policies apply. Addendum of Defendants–Appellants, Exh. C, at 1. In determining whether the insurer has a duty to defend, "we must examine the complaints in the underlying actions and decide whether there are any allegations that arguably or potentially bring the action within the protection purchased or a reasonable possibility that coverage exists." *EAD Metallurgical, Inc. v. Aetna Casualty &*

*Sur. Co.*, 905 F.2d 8, 11 (2d Cir.1990) (quotations and citations omitted). *See also C.H. Heist Caribe Corp. v. American Home Assurance Co.*, 640 F.2d 479, 483 (3d Cir.1981) (noting that the duty to defend arises "if the allegations of the complaint state on their face a claim against the insured to which the policy *potentially* applies" (quotations and citations omitted) (emphasis in original)). We conclude that plaintiff had no duty to defend in either *Miller* or *Brothers* because the pollution at issue in both cases was clearly not "accidental" and was therefore plainly outside the scope of coverage of the policies.

As noted above, the insurance policies at issue in this case exclude from coverage any claim arising out of pollution unless it is "sudden and accidental." There is a sharp division of authority on the issue of whether pollution that occurs over an extended period of time is "sudden" within the meaning of the pollution exclusion. *See Grant–Southern Iron & Metal Co. v. CNA Ins. Co.*, 905 F.2d 954, 956 n. 3 (6th Cir.1990) (collecting cases on both sides of the issue).

■ However, we have found no similar division of authority concerning the meaning of the term "accidental." The courts have interpreted "accidental" to refer to pollution which is not expected or intended by the insured. *See, e.g., EAD Metallurgical*, 905 F.2d at 11 ("the present pollution damage, 'resulting from purposeful conduct, cannot be considered "accidental." ' " (quoting *Powers Chemco, Inc. v. Federal Ins. Co.*, 74 N.Y.2d 910, 911, 549 N.Y.S.2d 650, 651, 548 N.E.2d 1301, 1302 (1989)); *FL Aerospace v. Aetna Casualty & Sur. Co.*, 897 F.2d 214, 219 (6th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 284, 112 L.Ed.2d 238 (1990) ("The term 'accidental' means 'happening by chance' or 'unintentional' or 'fortuitous.' " (quoting *American College Dictionary* 8; *Webster's Third New Int'l Dictionary* 11)); *United States Fidelity & Guar. Co. v. Morrison Grain Co., Inc.*, 734 F.Supp. 437, 447 (D.Kan.1990) (stating that " 'accidental' refers to an unexpected release of pollutants"); *Technicon Elec. Corp. v. Ameri-*

can Home Assurance Co., 74 N.Y.2d 66, 75, 544 N.Y.S.2d 531, 534, 542 N.E.2d 1048, 1051 (1989) ("Inasmuch as the underlying complaint alleges and Technicon's answer concedes that its dumping of wastes was deliberate, the occurrence cannot be 'accidental' within the meaning of the policy."); *International Minerals & Chem. Corp. v. Liberty Mut. Ins. Co.*, 168 Ill.App.3d 361, 376, 119 Ill.Dec. 96, 106, 522 N.E.2d 758, 768 (1988) (interpreting "accidental" to mean that which is "unintended and unexpected from the standpoint of the insured"), *appeal denied*, 122 Ill.2d 576, 125 Ill.Dec. 218, 530 N.E.2d 246 (1988).

In light of the extensive findings of fact in *Miller* indicating that the pollution at issue here was intended by defendants, we conclude that the pollution was not "accidental." In *Miller*, the court found that "[i]ntentional acts of pollution ... were [performed] with a full knowledge of the damage that would be done...." *Miller v. Cudahy Co.*, 592 F.Supp. 976, 1006 (D.Kan. 1984). It further noted that

> [American Salt's management] reached a *conscious* and reasoned business decision to maximize profits at the expense of the necessary and required preventative maintenance of their complex physical plant and equipment. It was perfectly foreseeable to American Salt's management—*and was, in fact, foreseen by them*-that deterioration of the physical plant and equipment would occur, and would result in pollution of the environment if not corrected by aggressive routine maintenance.

*Id.* at 994 (emphasis added). *See also id.* at 995 ("The massive pollution that occurred when the vacuum pans were dumped during upsets was itself the result of a long-standing management decision to intentionally pollute the environment...."); *id.* at 996 ("[Otto] Reuschhoff [a past president of American Salt] made a conscious and reasoned decision to pollute the environment and take the occasional $10,000 fine as a cost of doing business."); *id.* at 996–97 ("With regard to many aspects of the plant operations ..., the Court finds that Reuschhoff intentionally performed

acts that damaged the plaintiffs and the environment....").

General Host argues that under a severability clause included in the policies, the court was required to "separately analyze the coverage as applied" to each of the defendants. Appellant's Br. at 46–47. However, the severability clause, by its own terms, provides only that the coverages are to be analyzed separately where a claim is made by one insured against another insured. *See* Appellant's Br. at 47 (quoting the severability clause). *See also* Appellee's Br. at 44 n. 37. Because this case does not involve a claim by American Salt against General Host, or vice versa, the severability clause does not appear to be applicable.

In any event,. even under a separate analysis, the findings of fact made in *Miller* preclude coverage to General Host. The district court in *Miller* found that "General Host not only had actual knowledge" of the way in which American Salt's Lyons, Kansas plant was operated, it was "in fact responsible for the [ ] plant being operated in this manner." *Id.* at 997. The court further found that

> [although] General Host was fully informed about the pollution that was occurring at the American Salt plant, General Host did nothing to halt that pollution, and General Host actively participated in the formulation of the public face displayed by American Salt to the plaintiffs in this case, the citizens of the state, the State itself, and this Court.

*Id.* The court also concluded that General Host should be liable for the punitive damages awarded for the pollution attributable to Otto Rueschhoff, a former president of American Salt, "[b]ecause General Host authorized Rueschhoff to do these acts; recklessly retained him despite his unfitness to manage the plant; ratified his acts of pollution; and employed him in a managerial capacity, in the scope of which the acts of pollution were committed." *Id.* at 1007.

On appeal, this court affirmed the district court's award of punitive damages in *Miller*, noting that "[a]ppellants' conduct was deliberate, with full knowledge of the

**1488**

consequences and with a marked indifference thereto." *Miller v. Cudahy Co.*, 858 F.2d 1449, 1458 (10th Cir.1988), *cert. denied*, 492 U.S. 926, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989). Those findings and conclusions indicate that the pollution complained of in *Miller* was not accidental.[3]

Although *Brothers* involved a different time period for damages, the underlying pollution upon which the request for damages is based appears to be the same as that involved in *Miller*. The complaint filed in *Brothers* does not specifically identify the sources of the pollution forming the basis for the claims asserted in that case.[4] However, the complaint does expressly allege that the findings made in *Miller* "render many matters [in *Brothers* ] res judicata." Addendum of Defendants–Appellants, Exh. E, at 2, ¶ 5. It is true that the complaint filed in *Brothers* includes additional claims for damages resulting from capillary action and from the wanton failure to abate the pollution, neither of which were alleged in *Miller. Id.*

at 3, ¶ 2.[5] However, we interpret the complaint as alleging that those losses were the result of the pollution originating from the sources complained of in *Miller*, not from new sources. Defendants do not make any specific arguments in their briefs on appeal which call into doubt this understanding of the complaint.[6]

### III. *The Duty to Indemnify*

"The duty to indemnify is narrower in scope and distinct from the duty to defend. The reason is that an insurer's obligation to defend is measured by the allegations of the underlying complaint while the duty to indemnify is determined by the facts, which are usually established at trial." *Travelers Ins. Co. v. Waltham Indus. Laboratories Corp.*, 883 F.2d 1092, 1099 (1st Cir.1989) (quotations and citations omitted). *See also* R. Keeton & A. Widiss, *Insurance Law: A Guide to Fundamental Principles, Legal Doctrines, and Commercial Practices* § 9.1(b), at 989 (1988) (noting

---

**3.** Because we resolve this case solely on the basis of our conclusion that the pollution at issue was not "accidental," we do not address the choice-of-law issue discussed in the briefs on appeal. The parties argue the laws of one of the following four states apply in this case: (1) Kansas; (2) New York; (3) Illinois; and (4) Connecticut. We have found no cases in the state courts of Connecticut or Kansas which address the meaning of the term "accidental" in the pollution exclusion. However, those courts that have addressed the issue generally have agreed that pollution is not "accidental" within the meaning of the pollution exclusion if it is expected or intended (including courts from jurisdictions that are not potentially applicable here). We have no reason to believe that courts in Kansas or Connecticut would differ from the other jurisdictions on this issue. We note further that in the course of applying Kansas law, the court in *United States Fidelity*, 734 F.Supp. at 446–47, stated that the term " '[a]ccidental' is typically defined from the subjective viewpoint of happening unexpectedly or by chance...."

**4.** The complaint states only that "[a]ll the salt presently dissolved in the aquifer escaped from the property in control of American Salt." Addendum of Defendants–Appellants, Exh. E, at 2, ¶ 6.

**5.** In fact, the plaintiffs in *Miller* requested permission to amend their pleadings to include "allegations that the salt dissolved in the aquifer is rising to the surface by capillary action and

threatening to turn the entire area into a desert devoid of all plant life." *Miller v. Cudahy Co.*, 567 F.Supp. 892, 895 (D.Kan.1983). The district court refused to grant the plaintiffs' request because they had failed to allege that any actual damage had yet resulted from the capillary action. The court stated that "[w]hen and if [such] damage occurs, justice can be served by a separate lawsuit seeking recovery for that damage." *Id.* at 896.

**6.** Defendants do argue that Count I of the complaint filed in *Brothers* seeks damages resulting from "new acts of pollution." Brief of Defendants–Appellants at 13. *See also id.* at 43. Count I, however, merely alleges an inability to grow irrigated crops—the same claim litigated in *Miller*. In addition, Count I alleges that "[t]he pollution from American Salt *continues* as a continuing abatable nuisance." Addendum of Defendants–Appellants, Exh. E, at 2, ¶ 7 (emphasis added). In light of the fact that the complaint expressly refers to the preclusive effect of the findings in *Miller, see id.* at ¶ 5, the use of the word "continues" suggests that the pollution complained of in *Brothers* is the same as that complained of in *Miller*. Moreover, we note that in the answer filed in *Brothers*, defendants stated that "even a partial reversal on the law or on the facts [in the then-pending appeal in *Miller* ] *could preclude any recovery whatever* under the instant action." Reply Addendum of Defendants–Appellants, Exh. B, at 9, ¶ 34 (emphasis added).

that the duty to defend "is more extensive or 'broader' than the obligation to indemnify the insured"); *EAD Metallurgical,* 905 F.2d at 11. Although the *Miller* case went to trial, the *Brothers* action was settled prior to trial. As a result, the duty to indemnify in *Brothers* "must be determined [o]n the basis of the settlement." *Travelers Ins.,* 883 F.2d at 1099. *See also Ogden Corp. v. Travelers Indem. Co.,* 740 F.Supp. 963, 968 (S.D.N.Y.1990).

In light of our conclusion that the broader duty to defend was not triggered in *Miller,* we conclude that plaintiff had no duty to indemnify defendants for the damages awarded in *Miller.* The duty to indemnify in *Brothers* is controlled by the terms of the settlement, which has not been made a part of the record in this case. Nevertheless, there have been no allegations that the settlement involved matters outside those raised in the complaint.[7] In the absence of any such allegations, we conclude that there is no duty to indemnify for any amounts paid by defendants pursuant to the settlement in light of our conclusion that there was no duty to defend in *Brothers. See Ogden,* 740 F.Supp. at 968.

In sum, because we conclude that the pollution at issue in *Miller* and *Brothers* was not "accidental," we AFFIRM the district court's July 28, 1987 order entering summary judgment in favor of plaintiff.

---

**7.** Defendants do mention the fact that the district court in *Brothers* granted the plaintiffs in that case permission to amend their complaint to include some additional pollution claims. *See* Brief of Defendants–Appellants at 14 n. *. However, that complaint was never filed. No mention was made in defendants' reply brief that the settlement agreement in *Brothers* resolved any issue other than the issues raised in the complaint filed in that case. Due to the short time period, if any, between the time that the settlement in *Brothers* became final and the time that the reply brief in this case had to be filed, there may have been insufficient time to include in the reply brief a discussion of the terms of the settlement in *Brothers.* However, we further note that there were no allegations that the settlement resolved matters outside the complaint during oral argument in this case or in any of the subsequent letters filed in this court.