Ted and Debra SCHEUFLER, husband and wife; Paul and Elva Scheufler, husband and wife, Harvey Wilhaus; Alice M. Richmond; Janice Allen; Mabel V. Colle Trust; Kenneth D. and Eileen P. Knapp, husband and wife; Peirce Knapp Farms, Inc., by Walter C. Peirce, President; Donald and Sharon Hubbard, husband and wife; and Violet Stockham, Plaintiffs,

v.

GENERAL HOST CORPORATION, a New York Corporation, Defendant.

Civ. A. No. 91–1053–FGT.

United States District Court, District of Kansas.

March 8, 1995.

Casey R. Law, Bremyer & Wise, P.A., McPherson, KS, Deborah T. Carney, Deborah & T.J. Carney, P.C., Golden, CO, H. Lee Turner, H. Lee Turner, P.A., Great Bend, KS, for Ted Scheufler and Debra Scheufler, Mable V. Colle, Donald Hubbard and Sharon Hubbard.

Casey R. Law, Bremyer & Wise, P.A., McPherson, KS, Allen G. Glendenning, Watkins, Calcara, Rondeau & Friedeman, P.A., Great Bend, KS, Deborah T. Carney, Deborah & T.J. Carney, P.C., Golden, CO, H. Lee Turner, H. Lee Turner, P.A., Great Bend, KS, for Paul Scheufler, Elva Scheufler, Harvey Wilhaus, Alice M. Richmond, Janice Allen and Violet Stockham.

Allen G. Glendenning, Watkins, Calcara, Rondeau & Friedeman, P.A., Great Bend, KS, Deborah T. Carney, Deborah & T.J. Carney, P.C., Golden, CO, for Floy H. Wilson.

Allen G. Glendenning, Watkins, Calcara, Rondeau & Friedeman, P.A., Great Bend, KS, Deborah T. Carney, Deborah & T.J. Carney, P.C., Golden, CO, H. Lee Turner, H. Lee Turner, P.A., Great Bend, KS, for Kenneth D. Knapp.

Casey R. Law, Bremyer & Wise, P.A., McPherson, KS, Allen G. Glendenning, Watkins, Calcara, Rondeau & Friedeman, P.A., Great Bend, KS, Deborah T. Carney, Deborah & T.J. Carney, P.C., Golden, CO, H. Lee Turner, H. Lee Turner, P.A., Great Bend, KS, Kenneth E. Peirce, Turner & Boisseau, Chtd., Hutchinson, KS, for Eileen Knapp, Peirce Knapp Farms, Inc., Drake Knapp, and Walter C. Peirce.

Ron C. Campbell, Thomas D. Kitch, Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, KS, William R. Sampson, Shook, Hardy & Bacon, Overland Park, KS, Rodney Zerbe, Thomas F. Munno, William F. Downey, Dechert, Price & Rhoads, New York City, for General Host Corp.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This is the latest in a series of nuisance actions that have been brought before this court since 1977 involving salt pollution to a fresh water aquifer underlying a mass of land that includes plaintiffs' properties. The alleged source of the salt pollution is the American Salt plant, currently owned by North American Salt Company and formerly owned by a wholly owned subsidiary of defendant, General Host Corporation. The matter is before the court on plaintiffs' motion for partial summary judgment (Doc. 117).

In 1977, several property owners brought suit alleging that salt pollution of the Cow Creek Aquifer from the American Salt Plant constituted a continuing abatable nuisance. Trial was held to the court, and judgment was entered for the plaintiffs for actual and punitive damages. *Miller v. Cudahy,* 592 F.Supp. 976 (D.Kan.1984). The Tenth Circuit affirmed the judgment. *Miller v. Cudahy,* 858 F.2d 1449 (10th Cir.1988), *cert. denied,* 492 U.S. 926, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989).

The plaintiffs in this case also own land which lies over the Cow Creek Aquifer. Plaintiffs were not parties to the *Miller* case because the pollution in the aquifer had not reached their property.[1] Plaintiffs allege that due to the movement of the aquifer, their groundwater is now polluted with salt from the American Salt Plant.

General Host, the defendant in this case, was a defendant in the *Miller* case and was ordered to pay actual and punitive damages. This case presents many of the same legal and factual issues that were presented in *Miller.*

The court is familiar with the standards governing the consideration of a motion for summary judgment. The Federal Rules of Civil Procedure provide that summary judg-

---

1. Some of the plaintiffs in this case, or their predecessors in interest, were originally named plaintiffs in *Miller,* but the court granted summary judgment on their claims because the salt pollution had not yet affected their property. *Miller v. Cudahy,* 567 F.Supp. 892, 898 (D.Kan. 1983).

ment is appropriate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). There is no dispute as to the facts for purposes of this motion.

Plaintiffs seek partial summary judgment on the basis of collateral estoppel, or issue preclusion. The plaintiffs seek to preclude relitigation of several factual issues, including background information about the salt mining industry, the pollution of the Cow Creek Aquifer with salt, and the source of that pollution. The plaintiffs also seek to preclude the defendant from relitigating the issue of its legal responsibility for operations of American Salt at the time the pollution occurred.

■ The court must first decide whether the mutuality doctrine applies to prohibit plaintiffs, who were not parties to the *Miller* action, from using collateral estoppel offensively against the defendant. The issue turns on whether the court applies federal or state law. Under Kansas law, collateral estoppel operates to prohibit relitigation of an issue from a prior case when:

(1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue, based upon ultimate facts as disclosed by the pleadings and judgment; (2) the parties are the same or in privity; and (3) the issue was actually

determined and was necessary to the support of the judgment.

*Williams v. Evans,* 220 Kan. 394, syl. ¶ 2, 552 P.2d 876 (1976); *see also Gigot v. Cities Serv. Oil Co.,* 241 Kan. 304, 331, 737 P.2d 18 (1987) (quoting *Williams* ), *McDermott v. Kansas Public Serv.,* 238 Kan. 462, 473–74, 712 P.2d 1199 (1986). The second requirement is known as mutuality.

In *Blonder–Tongue Lab. v. University of Illinois Found.,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), and *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), the Supreme Court held that mutuality is not a requirement for application of collateral estoppel in federal question cases before the federal courts. The federal courts instead consider whether there was a full and fair opportunity for the party against whom collateral estoppel is asserted to litigate the issue in the earlier action and, if so, whether applying collateral estoppel would, for some other reason, be unfair. 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4464 (1981). The courts have broad discretion in deciding the fairness question. *Id.*

As stated above, the Supreme Court's decisions in *Blonder–Tongue* and *Parklane Hosiery* dealt only with federal question cases. The Supreme Court has not decided whether the court should look to state or federal law to determine whether mutuality is required in successive diversity cases. The appellate courts have split on the issue, and the law in the Tenth Circuit remains uncertain. However, it appears the emerging view in the Tenth Circuit is that federal law should be applied.

In *Federal Insurance Co. v. Gates Learjet Corp.,* 823 F.2d 383 (10th Cir.1987), the court, declining to reach a broad holding as to whether federal or state law governs the application of collateral estoppel in diversity actions,[2] held that where the issue is whether there is privity between the parties in successive diversity suits, the federal court must

---

**2.** The court noted that it had stated in *Hayles v. Randall Motor Co.,* 455 F.2d 169, 173 (10th Cir. 1972), that the question of whether a party in a diversity action was bound by a prior judgment was to be determined by state law. *Federal*

*Insurance,* 823 F.2d at 386. The court decided that *Hayles* was not strong precedent because the issue in that case was not whether state or federal law applied. *Id.*

apply state law. *Id.* at 385–86. The court determined that under Georgia law (which governed the earlier diversity action), there was not privity between Federal Insurance and the plaintiffs in the earlier action. *Id.* The court then, without discussion, applied Georgia's mutuality requirement and held that the district court had erred in giving preclusive effect to the judgment in the earlier lawsuit because mutuality was absent. *Id.*

In *Petromanagement Corp. v. Acme–Thomas Joint Venture*, 835 F.2d 1329 (10th Cir.1988), the Tenth Circuit held that federal law governs the application of res judicata[3] where the issue is not clearly substantive. *Id.* at 1333. The court relied, in part on Restatement (Second) of Judgments § 87. *Id.* In *Petromanagement*, the issue was whether allegations of separate contract breaches must be tried in a single action. *Id.* The court held that the issue was not distinctly substantive and was, in fact, analogous to Federal Rule of Civil Procedure 13(a), dealing with compulsory counterclaims.

The Tenth Circuit noted an inconsistency between *Federal Insurance* and *Petromanagement* in *American Motorists Ins. Co. v. General Host Corp.*, 946 F.2d 1482, 1485 (10th Cir.), *vacated in part on other grounds*, 946 F.2d 1489 (1991). The court specifically declined to resolve the conflict, stating that both state law and federal law would permit the plaintiff to assert collateral estoppel in that case. *Id.* at 1486. *See also Frandsen v. Westinghouse Corp.*, 46 F.3d 975 (10th Cir. 1995) (noting the uncertainty in this issue, but declining to resolve as state and federal law would yield same result in that case). The court stated in *AMICO:* "We suspect that, like several other circuits, the Tenth Circuit will affirm the language of *Petromanagement* and the Restatement and apply federal preclusion law except where the matter is distinctly substantive." *AMICO*, 946 F.2d at 1485 (citations omitted).

This leads to the question of whether mutuality is a "distinctly substantive" matter. The court concludes that it is not. "[T]he

basic rules of claim and issue preclusion in effect define finality and hence go to the essence of the judicial function." Restatement (Second) of Judgments § 87, comment b. *See also* 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4472 (mutuality as good example of rule "so closely tied to procedural interests ... that federal [rule is] appropriate in a federal court...."). Several decisions, among them Judge Cook's well-reasoned opinion in *In re Air Crash at Detroit Metropolitan Airport*, 776 F.Supp. 316, 322 (E.D.Mich.1991), have noted that the federal courts have a strong interest in determining the scope and finality of their own judgments. *Id.* (quoting *Kern v. Hettinger*, 303 F.2d 333, 340 (2d Cir.1962)). The required elements of collateral estoppel, including mutuality, reflect concerns of fairness, judicial economy, and finality. *See id.* These are procedural concerns, which the federal law addresses with its own requirements. *See id.*

■ The court must, therefore, apply the federal law of collateral estoppel in this matter. The Tenth Circuit has stated the elements of collateral estoppel as follows:

(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*United States v. Rogers*, 960 F.2d 1501 (10th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 817, 121 L.Ed.2d 689 (1992). There is no dispute that the first three elements are met in this case. It is also beyond question that General Host had a full and fair opportunity to litigate the issues at hand in the first trial. A bench trial was held before this court, and the issues underlying plaintiffs' motion were the subject of a great deal of testimony and argument. The defendant was ordered to

---

**3.** Although *Petromanagement* involved claim preclusion rather than issue preclusion, the Tenth Circuit stated in dicta in a later case that this is not a meaningful distinction. *American Motorists Ins. Co. v. General Host Corp.*, 946 F.2d 1482, 1985 (10th Cir.), *vacated in part on other grounds*, 946 F.2d 1489 (1991).

pay millions of dollars in compensatory and punitive damages. The court's resolution of the facts in *Miller* was subjected to appellate review. The defendant had every incentive and opportunity to defend vigorously the first action. *See Parklane Hosiery*, 439 U.S. at 330, 99 S.Ct. at 651.

Finally, the court must consider whether there is some other reason the application of collateral estoppel would be unfair in this case. In this regard, defendant argues only that there have been material changes in circumstances surrounding the American Salt Plant and the pollution of the Cow Creek Aquifer. However, these changes do not relate to the issues which defendants are precluded from litigating.

■ One factor the court must consider in deciding the fairness question is whether the plaintiffs could have easily joined the first lawsuit. *Id.* at 331, 99 S.Ct. at 651–52. As a general rule, a plaintiff who could have easily joined the first action may not make offensive use of collateral estoppel. *Id.* Here, the plaintiffs had no cause of action at the time of the *Miller* action because the salt pollution had not reached their properties. In fact, some were dismissed for that very reason.

■ Although the court will apply collateral estoppel to some issues in this case, plaintiffs are not entitled to summary judgment. Other issues of fact and law remain for determination. Among these are whether the plaintiffs' groundwater supplies have been polluted, whether any contamination of plaintiffs' groundwater was caused by the American Salt plant's negligent derelictions as determined in the first case [4] or by some other source or intervening cause, whether state regulation of water resources would have precluded irrigation of plaintiffs' properties from the aquifer, and the nature and amount of plaintiffs' damages, if any. These issues are among the subjects presented in other motions, which the court will address in a separate order.

**IT IS BY THIS COURT THEREFORE ORDERED** that plaintiffs' motion for partial summary judgment (Doc. 117) is hereby denied.

---

4. The court has a present clear recollection of the evidence and interminable delays to judgment in the first case. The world's leading geohydrologists were witnesses in that case. They expressed varying estimates of how far the pollution might flow and how long it would take to abate the pollution. A long delay was granted to the defendant for them to undertake abatement in lieu of an award of punitive damages. Defendant's experts estimated clean-up would take as long as 200 years and no less than thirty-four years. The court brought in the Kansas Department of Health and Environment ("KDHE") for its expertise and governance. At the time final judgment was entered, abatement plans were going forward by the defendant, under the direction of the KDHE. Significant time has elapsed between judgment in that case and the filing of this case.

Hence, it remains to be determined whether the downstream course of the aquifer has reached and polluted the plaintiffs' properties. Evidence of defendant's abatement efforts and KDHE monitoring would appear to be ripe for inquiry in this case. However, expensive and time-consuming revisitation of causation of the source pollution is not necessary. The defendant has most certainly had its due process and exhaustion of the judicial process on that issue.