[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION FOR PARTIAL SUMMARY JUDGMENT (#113) CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT (#115) OBJECTION TO MOTION FOR PARTIAL SUMMARY JUDGMENT (#116)
The issues herein are:
First, whether environmental cleanup costs pursuant to CERCLA constitute damages under the comprehensive general liability insurance policies issued to the plaintiff.
Second, whether the "owned property" exclusion applies to bar the plaintiff from claiming damages.
Third, whether the payments made by the plaintiff for environmental remediation were involuntarily made in response to an adversarial demand from the Connecticut Department of Environmental Protection so as to constitute legally incurred damages.
The environmental cleanup costs incurred by the plaintiff CT Page 7393 are damages within the coverage of the insurance contract. The "owned property" exclusion does not apply if the plaintiff can prove soil or water contamination. Payments made in response to an adversarial demand are not voluntary, and thus, are legally incurred damages. Therefore, both the defendant's and the plaintiff's motions for summary judgment are denied.
This action was initiated by way of a three count complaint, filed by the plaintiff, Timex Corporation, against the defendants, The Home Insurance Company and Commercial Union Insurance Company.[1] The plaintiff filed a revised complaint on February 7, 1997. The revised complaint contains seven counts seeking a declaratory judgment and monetary damages regarding the defendant's duties to indemnify and defend or pay defense costs, and claiming breach of contract.
Count one alleges a breach of duty to indemnify regarding alleged hazardous contamination of a manufacturing site formerly owned by the plaintiff. Count two alleges a breach of duty to defend and/or pay defense costs incurred as a result of the alleged contamination. Specifically, the plaintiff alleges that it "is seeking insurance coverage under various liability insurance policies sold by the defendants for all environmental actions that have been asserted, or may be asserted in the future, against [the plaintiff] with respect to the Park Road site and certain other third party sites. . . ." (Revised Complaint, 2/7/58, ¶ 6.) The plaintiff alleges that it owned the Park Road manufacturing site, and that it sold the property in 1983, but retained a lease for portions of the building. (Revised Complaint, 2/7/98, ¶¶ 7-8.) The site was subsequently sold to another party. (Revised Complaint, 2/7/98, ¶ 8.)
The plaintiff further alleges that "[c]ontaminants have been determined to be present in the drinking water wells of several residences nearby. . . . On or about February 17, 1994, owners of seven nearby residences filed a complaint against [the plaintiff] and [the current owner] in the United States District Court for the District of Connecticut. . . ." (Revised Complaint, 2/7/98, ¶¶ 9-10.) The action was based upon theories of strict liability, negligence, negligence per se, nuisance and trespass, as well as response costs and contribution under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA).[2] (Revised Complaint, 2/7/97, ¶ 10.) Subsequently, on April 12, 1994, the plaintiff entered into a consent order with the Connecticut Department of Environmental CT Page 7394 Protection which required the plaintiff to remediate the site. (Revised Complaint, 2/7/97, ¶ 11.)
On or about October 19, 1995, the plaintiff was served with another complaint relating to the contamination of the Park Road site. This action also named the party to whom the plaintiff had sold the Park Road site. The plaintiff alleges that it "has incurred and will incur substantial expenses and/or liabilities in defense and resolution of [these] claims. Some of the defense costs have been reimbursed . . . pursuant to an agreement among [the plaintiff] and six of its primary insurance carriers (including defendant Commercial Union), whereby the carriers commit to pay a certain percentage of [the] defense costs. . . ." (Revised Complaint, 2/7/97, ¶ 15.)
Counts three and four are identical to counts one and two, with the exception that they apply to a different contamination site. The site referenced by these counts is the Duffy Brothers disposal site in Waltham, Massachusetts. The plaintiff alleges that it sent waste to this site "from the late 1960's up to and including 1973." (Revised Complaint, 2/7/97, ¶ 16.) The plaintiff further alleges that on October 25, 1993, it was served with a complaint, filed in the United States District Court for the District of Massachusetts, seeking contribution for remediation costs. (Revised Complaint, 2/7/97, ¶ 17.) Subsequently, on or about March, 1994, the plaintiff alleges that it settled its liability in the Duffy Brothers litigation for $268,000, incurring at least $30,000 in defense costs. (Revised Complaint, 2/7/97, ¶ 18.)
Counts five and six, identical to counts one, two, three, and four, relate to the alleged contamination of the Solvents Recovery Services (SRS) site in Southington, Connecticut. The alleged contamination was incurred during the "late 1950's to the early 1960's." (Revised Complaint, 2/7/97, ¶ 19.) The plaintiff also alleges that "[s]ome of the materials sent to SRS are alleged to have been trans-shipped to the Old Southington Landfill. . . ." (Revised Complaint, 2/7/97, ¶ 19.)
The plaintiff further alleges that in 1992, it received notice letters from the United States Environmental Protection Agency (EPA) "identifying [the plaintiff] as a party potentially liable for cleanup costs at the SRS site. [The plaintiff] is also alleged to be a potentially responsible party at the Old Southington Landfill site." (Revised Complaint, 2/7/97, ¶ CT Page 7395 20.) Subsequently, in 1993, the plaintiff settled its liability to the EPA with respect to the SRS site for approximately $32,000. (Revised Complaint, 2/7/97, ¶ 21.)
Finally, count seven alleges that the defendant breached its contractual duties to the plaintiff and seeks compensatory damages. On March 26, 1997, the defendant Home Insurance Company, filed its general denial of liability and twenty-eight special defenses.
On December 15, 1997, the defendant filed a motion for partial summary judgment on all counts of the revised complaint pursuant to the case management order, dated October 14, 1997. The defendant also filed a memorandum of law and extensive documentary evidence in support of its motion. The defendant moves for summary judgment on the following grounds: first, that New York law controls[3]; second, that the CERCLA environmental cleanup costs do not constitute damages within the terms of the insurance policy; third, that unless actual damage is shown to third-party property, the "owned property" exclusion applies barring recovery by the plaintiff; fourth, that the plaintiff voluntarily paid the cleanup costs, which were not the result of a judgment, thereby barring recovery of the expenses as damages; and lastly, that the alleged damage did not occur during the period of policy coverage.[4]
On January 9, 1998, the plaintiff filed an opposition to the defendant's motion for partial summary judgment and a cross motion for summary judgment. Both the objection and the cross motion, supplemented by a memorandum of law and extensive documentary evidence, address the grounds raised by the defendant.
A "motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." Wilson v. New Haven, 213 Conn. 277, 279,567 A.2d 829 (1989). Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." Miller v.United Technologies Corp. , 233 Conn. 732, 751, 660 A.2d 810
(1995). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party[.]" (Internal quotation marks omitted.) Home Ins. Co. v. Aetna Life Casualty Co.,235 Conn. 185, 202, 663 A.2d 1001 (1995). CT Page 7396
I. Environmental Cleanup Costs "as damages"
The defendant argues that environmental cleanup costs, incurred pursuant to CERCLA liability, do not constitute damages under the insurance policy in issue. The defendant maintains that the relevant portions of the policies are unambiguous. However, the defendant's insurance policy (# 9555072), with a $5,000,000.00 policy limit, and a Home and Insurance Company of North America insurance policy (# 9557538), with a $10,000,000.00 policy limit, do not define the term "damages".[5] (Defendant's Exhibits A and B.)
Turning to the relevant New York law, the defendant cannot support its argument that environmental cleanup costs do not constitute damages under the policies. "In New York, the terms of an insurance policy have long been accorded a `natural and reasonable meaning,' . . . corresponding to `the reasonable expectation and purpose of the ordinary businessman.'" (Citation omitted.) Avondale Industries, Inc. v. Travelers Indem.Co., 887 F.2d 1200, 1206-07 (2d Cir. 1989), reh'g denied,894 F.2d 498 (2d Cir. 1990), cert. denied, U.S.,110 S.Ct. 2588, 110 L.Ed.2d 269 (1990); Ryan v. Royal Ins. Co. ofAmerica, 916 F.2d 731, 736 (1st Cir. 1990). "If there is uncertainty concerning its meaning, a policy is construed to embrace coverage."Avondale Industries, Inc. v. Travelers Indem. Co., supra, 1207. Absent any "specific exclusionary language in the policy," New York courts will not limit the definition of a policy term. Id.
As in Avondale, the present policies do not define the term "damages." Defendant's contention that the policies are unambiguous is not persuasive. If the defendant wanted to exclude from coverage policy obligations that it would otherwise assume, it should have done so in clear and unmistakable language.Avondale Industries, Inc. v. Travelers Indem. Co., supra, 1207. As the court said in Avondale, "viewed from the insured's perspective . . . an ordinary businessman reading [the policies] would have believed himself covered for the demands and potential damage claims now being asserted. . . ." Id; see Bankers TrustCo. v. Hartford Acc. Indem., 518 F. Sup. 371, 374, vacated on other grounds, 621 F. Sup. 685 (S.D.N.Y. 1981).
Turning, then, to whether environmental cleanup costs constitute damages, New York law allows such recovery when the insurance policy does not expressly exclude such damages.Colonial Tanning Corp. v. Home Indem. Co., 780 F. Sup. 906, 924-25
(N.D.N.Y. 1991); Avondale Industries, Inc. v. Travelers Indem.CT Page 7397Co., supra, 1207; see Bankers Trust Co. v. Hartford Acc. Indem., supra, 518 F. Sup. 373-74. The defendant has not cited any New York case law which contradicts this holding.[6] Therefore, the defendant's motion for summary judgment on this ground, with respect to counts one, three, and five, is denied.
II. "Owned Property" Exclusion
The defendant next argues that even if the cleanup costs constitute damages under the policies, it is not obligated to indemnify the plaintiff because the damage did not occur to third-party property as required by the policies.[7] The plaintiff argues in opposition that New York law allows recovery for work performed on an insured's property to prevent or mitigate damage to third-party property.
In Colonial Tanning, the court held that "[s]o long as the . . . complaint contains allegations that encompass the possibility that off-site contamination exists or that the clean-up was performed to prevent damage to the property of third parties, the owned property exclusion would not be applicable to work done on the property." Colonial Tanning Corp. v. Home Indem.Co., supra, 780 F. Sup. 926, quoting Boyce Thompson Instit. forPlant Research v. Insurance Co. of North America, 751 F. Sup. 1137,1141 (S.D.N.Y. 1990). Relying on the language quoted above, and the holding of Gerrish Corp. v. Universal UnderwritersInsurance Co., supra, 947 F.2d 1030, the district court stated that "it is clear in this Circuit it will be extremely difficult for an insurer to avoid its defense obligations [in environmental remediation cases] . . . by resorting to the owned property exclusion." Colonial Tanning Corp. v. Home Indem. Co., supra, 926; see Gerrish Corp. v. Universal Underwriters Insurance Co., supra, 1030 ("[O]nly proof of damage to property not owned, controlled or possessed by . . . [the insured] . . . must be proffered."); see also Bankers Trust Co. v. Hartford Acc. Indem., supra, 518 F. Sup. 373
-74 (holding that insurer has burden to show exclusion applies to prevent recovery of remediation costs where costs are reasonable in light of ambiguous policy provisions).[8]
Plaintiff's complaint contains allegations which encompass the possibility that off-site contamination exists. See ColonialTanning Corp. v. Home Indem. Co., supra, 926. In its revised complaint, the plaintiff alleges that "[c]ontaminants have been determined to be present in the drinking wells of several residences nearby Timex's former manufacturing facility." CT Page 7398 (Revised Complaint, ¶ 9.) The plaintiff also specifically alleges that complaints were filed which contain allegations that the plaintiff is responsible for shipping hazardous materials to various off-site disposal sites which now require remediation. (Revised Complaint, ¶¶ 16, 19). The plaintiff further alleges that in response to the complaints, it settled its liability to the abutting land owners regarding the off-site contamination. (Revised Complaint, ¶ 17, 21). In light of the above, the plaintiff has alleged the possibility of off-site contamination required under New York law to constitute damage to third-parties. Therefore, the defendant's motion for summary judgment with respect to count one on this ground is denied.
III. "Voluntary Payments"
Next, the defendant argues that it is not liable to the plaintiff for any voluntary payments made to remediate the contaminated sites. The defendant maintains that the "evidence to date has failed to show any serious or coercive governmental threats to enforce cleanup of the sites at issue." (Defendant's Memorandum, p. 23.) The defendant cites Borg-Warner Corp. v.Insurance Co. of North Am., 174 App.Div.2d 24, 577 N.Y.S.2d 953 (3d Dept.), appeal denied, 80 N.Y.2d 753, 600 N.E.2d 632 (1992), andRyan v. Royal Ins. Co., supra, 916 F.2d 731, in support of its position.
Borg-Warner held that remediation costs incurred in response letters from an administrative agency that seek voluntary participation, without threatening litigation, are not covered as damages under comprehensive general liability policies.Borg-Warner Corp. v. Insurance Co. of North Am., supra, 36. Ryan
held that more proof is needed to show that an agency has assumed an adversarial position toward an insured than merely proof of an invitation by the state environmental protection agency to voluntarily remediate hazardous damage to an area. Ryan v. RoyalIns. Co., supra, 741.
The defendant's reliance on these two cases is misplaced. InColonial Tanning, the court observed that Ryan held that if the government assumes an adversarial posture, "making sufficiently clear that the force of the State will be brought promptly to bear in a way that threatens the insured with probable and imminent financial consequences, then the functional equivalent
of a suit may be in progress and the insured might reasonably expect the insurer to defend." (Emphasis added.) ColonialCT Page 7399Tanning Corp. v. Home Indem. Co., supra, 780 F. Sup. 915, quotingRyan v. Royal Ins. Co., supra, 741. Moreover, the ColonialTanning court criticized the Borg-Warner court, stating that it "offered absolutely no analysis to support its holding that an administrative proceeding does not constitute a suit." Id., 917.
Adopting the reasoning of Ryan, the Colonial Tanning court analyzed the positions of the parties in the case before it and determined that the government agency's position was "sufficiently adversarial and coercive so as to constitute a suit within the meaning of the policies at issue." Id., 916. The court found that despite paying the civil penalty and starting its own inspection and cleanup, the plaintiff-insured did not surrender its right to receive indemnification from its insurer. Id. The court explicitly found that the "unequivocal reservation of rights" by the plaintiff-insured, and the explicit statement by the plaintiff-insured that it was engaging in the cleanup "as a part of the defense of the [Department of Environment Conservation] proceeding." Id. Lastly, the court noted that one of the consent orders reserves the right of the government to enforce the order in the event of non-compliance. Id.; see alsoAvondale Industries, Inc. v. Travelers Indem. Co., supra, 887 F.2d 1206 (holding that demand letter advising insured that a public authority had assumed an adversarial posture towards insured and threatening loss of substantial rights in event of noncompliance was sufficient to constitute a suit).
The present case is similar to Colonial Tanning in that the position of the plaintiff vis-a-vis the government was sufficiently adversarial so as to constitute a "functional equivalent" of a suit. For example, the plaintiff argues in its memorandum in opposition to the defendant's motion for summary judgment that the administrative order of the Connecticut Department of Environmental Protection was a serious governmental threat to enforce remediation of the contaminated sites. The administrative order, submitted by the plaintiff, reads as follows: "Noncompliance. This consent order is a final order of the Commissioner with respect to the matters addressed herein, and is nonappealable and immediately enforceable. Failure to comply with this consent order may subject Respondent to an injunction and penalties under Chapters 439, and 445 or 446k or the Connecticut General Statutes." (Connecticut DEP Consent Order SRD-045, p. 11, ¶ 11.) Like Colonial Tanning, the Connecticut Department of Environmental Protection reserved its right to enforce the consent order, if necessary, through litigation. CT Page 7400Colonial Tanning Corp. v. Home Indem. Co., supra, 780 F. Sup. 916. Like Colonial Tanning, and unlike Borg-Warner, the present case was sufficiently adversarial in that the Connecticut Department of Environmental Protection unequivocally stated that its order was nonappealable and immediately enforceable. See id.; Borg-WarnerCorp. v. Liberty Mutual Ins. Co., supra, 174 App.Div.2d 36.
Moreover, the plaintiff argues that public policy requires an insured polluter to remediate its hazardous damages as soon as possible. Colonial Tanning has noted with approval such an argument, reasoning that "public policy weighs in favor of requiring the insurers to provide [the insured] with a defense. . . . Had [the insured] disregarded the [government agency] and/or refused to enter into a consent order, the common practice for initiating . . . [remediation], the liability costs to [the insured] would have drastically increased." ColonialTanning Corp. v. Home Indem. Co., supra, 917; see Maryland Cas.Co. v. Wausau Chemical Corp. , supra, 809 F. Sup. 695-96 (holding that invitations by EPA to remediate cannot be termed "voluntary" due to potential liability of treble damages for noncompliance);Mapco Alaska Petroleum v. Central Nat. Ins. Co., supra,795 F. Sup. 950-51 (implicitly holding that voluntary consent orders avoid litigation and effectuate remediation). The defendant's motion for summary judgment as to counts one, three, and five is denied with respect to the issue of "voluntary" payments.
IV. Determination of Damage During Policy Coverage[9]
"In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski,206 Conn. 495, 500, 538 A.2d 1031 (1988). The issue of whether the alleged damage occurred during the period of policy coverage is a disputed issue of material fact. The issue of whether the alleged damage occurred during the years of 1966-69 cannot be determined without expert testimony and credible evidence. Complex cases, especially those cases like the present matter which involve issues of contamination and determinations as to what time such contamination occurred, are not properly disposed of on a motion for summary judgment. United Oil Co. v. Urban RedevelopmentCommission, supra, 158 Conn. 375; see Miller v. UnitedTechnologies Corp. , 233 Conn. 752. Therefore, the defendant's motion for summary judgment on counts two, four, and six is denied. CT Page 7401
V. Breach of Contract
In light of the reasoning above, the defendant is not entitled to summary judgment on the allegation of breach of contract contained in count seven. Therefore, the defendant's motion for summary judgment is denied as to count seven.
Based upon the reasons above, the defendant's motion for summary judgment and the plaintiff's cross motion for summary judgment are denied.
KULAWIZ, J.